Case 96—PETITION EQUITY—October 30.

# Bent & Co. v. Barnett.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CO-TENANTS—CONTRIBUTION FOR REPAIRS.—Where one of several co-tenants, without the consent of the others, makes improvements other than ordinary repairs, he can not call upon them for contribution.

2. GUARDIAN AND WARD—IMPROVEMENT BY GUARDIAN OF WARD'S REAL ESTATE.—Where the property of wards has been enhanced in value by improvements erected under a contract made by the guardian in good faith for the benefit of the wards, the contractors may subject the rents of the property, to the extent that they have been increased by reason of the improvements, after deducting insurance, taxes and cost of repairs, to the payment of the actual cost of the improvements, although the guardian had no power to make the contract.

A father, who was also statutory guardian of his infant children, executed a lease, for a term of seven years, of a building which he owned jointly with his wards, the lessees agreeing to reconstruct the

Bent & Co. v. Barnett.

building, and then rent out the property, and after paying certain claims, and paying the wards a certain sum each month, apply the balance of the rents to the payment of the cost of reconstruction. The lessees having received nothing on their claim at the end of the seven years, they now seek to subject the rents of the property, which is now in possession of the wards, who have arrived at age. *Held*— That the plaintiffs are entitled to subject the rents, to the extent that they have been enhanced in value by reason of the improvements, after deducting therefrom the insurance, taxes and cost of repairs. But the infants, now adults, can not be charged with interest, nor with more than the actual cost of the materials furnished.

3. POWER OF GUARDIAN TO LEASE WARD'S REAL ESTATE.—A guardian is entitled to the care and management of all the estate of the ward, real and personal, and may lease the real estate of the ward until the ward arrives at age, provided the lease is not for a longer term than seven years.

HARGIS AND EASTIN, H. L. STONE FOR APPELLANTS.

1. The acceptance of the lease by J. M. Bent & Co. for seven years did not waive their lien on the rents secured to them by reiterated contracts prior to the execution of said lease.

2. The court below, in its judgment of January 11, 1878, recognized the obligatory force of the acts of W. A. Barnett as guardian by upholding the lease. By that judgment the question as to whether the improvements were proper repairs was judicially settled.

3. The appellants have the right to subject the rents, at least to the extent they have been increased by reason of the improvements. (Graham & Butler v. Chautauqua Bank, &c., 5 B. M., 45; Athey, &c., v. Knotts, &c., 6 B. M., 25; Heck v. Fisher, &c., 78 Ky., 647.)

4. One of several joint tenants, or tenants in common, can compel the others to unite in the expense of necessary repairs. (4 Kent's Com., p. 370; Story's Eq., sec. 1236; Alexander v. Ellison, &c., 79 Ky., 149.)

JOHN S. JACKMAN FOR APPELLEE.

1. A co-tenant can not claim contribution for *improvements* placed on the joint property without the consent of the other co-tenants. (Freeman on Co-tenancy, sec. 262; Story's Equity, sec. 1235; 4 Kent, side-page 370; Walter v. Greenwood, 29 Minn., 90; Morgan v. Morgan, 23 La., 502; Crest v. Jack, 3 Watts (Pa.), 238; Dech's Appeal, 57 Pa. St., 472; 1 Wash. on Real Property, p. 421, secs. 17 and 17a.

2. A co-tenant can only order such repairs as are absolutely necessary to preserve the property. (Beatty v. Bridwell, 91 Pa. St., 438; Dech's. Appeal, 57 Pa. St., 472; Freeman on Co-tenancy, secs. 261, 278, 279; Anderson v. Greble, 1 Ashmead, 136.)

3. If appellants ever had any remedy it was under the local mechanics'

lien law of 1869 (Elliott, 924), but they failed to avail themselves of the provisions of this act. Whenever a statute creates a right, and provides a remedy, that remedy can alone be made available. (Johnson v. City of Louisville, 11 Bush, 527; Grigsby v. Barr, 14 Bush, 380.)

SAME COUNSEL IN PETITION FOR REHEARING.

Neither the guardian who violates his trust by erecting costly permanent improvements upon the land of his ward, without authority from court, nor he who deals with the guardian in the erection of such improvements, can have any enforceable remedy against the estate of the ward, the property improved, or the rents and profits thereof. (Gen. Stats., chap. 48, art. 2; Schroder's Dim. Relations, secs, 321, 285; Guy v. DuUprey, 16 Cal., 195; Payne v. Stone, 7 S. & M. (Miss.), 367; McCracken v. McCracken, 6 Mon., 349; Haggarty v. McCanna, 10 C. E. Greene (N. J. Eq.), 48; Barnett v. Cocke, 11 Has. (Tenn.), 566; Hassard v. Rowe, 11 Barb; Billenger v. Shafer, 2 Sand., 293; Snodgrass' Appeal, 37 Pa. St., 377; Putnam v. Richie, 6 Paige, 390; Green v. Winter, 1 John. Ch'y, 26; Miller's Appeal, 1 Pa. St., 326; Hobbs v. Harlan, 10 Lea (Tenn.), 268; 1 M. & B, 766, Act 1797.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

W. A. Barnett, the father and statutory guardian of his infant children, five in number, entered into an agreement with one Shryock, by which he leased to Shryock a three-story brick building in the city of Louisville for the term of seven years, the lease to begin on the first of January, 1876. The object of the lease was to enable Shryock, who was an architect, to reconstruct the building and then rent it out, and apply the rental to a lien held by the Herberts for the purchase money, and to the payment of the costs of reconstructing the building, that cost being estimated at near fifteen thousand dollars. Barnett had purchased in his own right the interest of the Herberts in this property, which was nine thirty-seconds, at the price of four thousand five hundred

dollars, for which he gave his notes. He also owned one-sixth of twenty-three thirty-seconds by inheritance from one of his children. The five children owned the remaining interest in the building, and this was its condition as to title when the guardian made the lease to Shryock. Barnett then made a contract as guardian, and in his own right, for he then had an interest in the property, with the appellants, J. M. Bent & Co., to execute the stone work on the building, for which he was to be paid seven thousand three hundred and ninety-three dollars and fifty cents, and for this he executed notes; he also gave a lien on the rents and a mechanic's lien on the property. He made contracts with other parties for work and materials, the entire building costing, before its completion, the sum of twenty-one thousand nine hundred and fifty-nine dollars and six cents. In January, 1876, he executed another lease to Shryock and Bent, in his own right and as guardian, for the term of seven years, under which the lessees were to rent out the building and pay taxes, insurance and repairs; to pay the infants a certain sum per month (fifty dollars), and the balance to be applied to the payment of the costs of reconstruction, the debts that had already been incurred, as well as those thereafter incurred necessary to the completion of the building, and also to pay the Herbert heirs the purchase money due them by him, Barnett.

One of the material men, Robert Biggs, shortly after this lease was made, filed his petition in the Louisville Chancery Court to enforce his mechanic's lien under a contract with Barnett. When this petition was filed

the children, by Thornbery, their next friend, filed
their petition against their father, who was their stat-
utory guardian, alleging that they were suffering for
the necessaries of life, and had, or were receiving, no
income from their estate. The cases were consolidated,
and the creditors who had worked upon and furnished
materials in erecting the building asserted their liens.
The heirs of Herbert filed their petition or asserted
their claims for the purchase money due them by the
guardian, and after this purchased back their interest,
thereby divesting Barnett of the title he had received
from them. The consolidated causes were submitted
to the chancellor, who enforced the lien of the Her-
bert heirs, and a mechanic's lien on the one-sixth of
twenty-three thirty-seconds of the building that came
to Barnett by inheritance, in favor of certain me-
chanics and material men who had complied with the
law, and further directed that from the renting under
the lease to Shryock and Benton the taxes, insurance
and repairs were to be paid, fifty dollars a month to
the children, and the balance of the rents to be paid
out to the workmen and material men in proportion
to their respective claims.

Bent & Co., it seems, had furnished material and
employed labor on the building, and, at the expira-
tion of the seven years' lease, had received nothing
for their work and material furnished. They then
tendered a supplemental petition, alleging that the
work they did on the building was necessary to make
it habitable; that it had greatly enhanced its value,
and nothing had been received by them from the
rents. They asked that the property be placed in

the hands of a receiver, and the rents applied to the payment of their debts. They also claim that Barnett was a co-tenant with his children, and had the right to make the improvement, and, therefore, they were entitled to be substituted to his rights, so that they could compel the children as co-tenants to contribute to the costs of reconstruction. A general demurrer was filed to the petition as amended, and sustained by the vice-chancellor, and the appellants declining to plead further, their petition was dismissed, except as to their claim against Barnett in his individual right. Barnett, it seems, had gone into bankruptcy, and had but little, if any, estate when these contracts with reference to the construction of the building were made and executed.

The question presented is, were the plaintiffs, on the facts alleged, entitled to relief?

We have had some difficulty in reaching a conclusion in this case, as the record of the former hearing, to which the supplemental petition was filed, as well as the pleading itself, presents a case so full of equity as to disturb the conscience of the chancellor in the attempt to deny all relief, and on the other hand the guardian, without any authority from the chancellor, has incumbered the realty of the infants to an extent that if the property itself could be subjected to the payment of the cost of construction, it would take from them the entire building. The building was not only repaired, but reconstructed. It was, in fact, a new building reared upon the site of the old, and the fact that the father was a co-tenant with his infant children did not authorize the expenditure, and if they

had been adults their co-tenant could make no such expenditure, and then require contribution from co-tenants, unless they had in some manner consented to the change. This is not a case of mere ordinary repairs, where, for the preservation of the property, one tenant causes the repairs to be made, and, therefore, the right of one tenant to make such an improvement and then ask for contribution from his co-tenant is not involved in this case. (Freeman on Co-tenancy, section 262; 1 Washburn on Real Property, 421.)

The father, being both the natural and statutory guardian of the infants, conceived that it was necessary to reconstruct an old dilapidated building that would soon cease to yield an income to his children, and with a view of advancing their interests, in the best of faith, entered into this contract with the appellants, who, in like good faith, have executed the contract, and expended over seven thousand dollars in enhancing the value of this property, the rents of which are now being enjoyed by these children, who have now arrived at the age of twenty-one years. They have expended not one cent for an improvement, out of which, if the facts alleged are true, they are receiving a handsome income, and but for which the building would have been valueless, and the entire property worth no more than the value of the ground upon which the new building stands.

Was it, then, to the interest of the infants that the improvement should be made? And if so, to what extent should the income of the property be charged in order to reimburse the expenditure made by the appellants?

If the father of the appellees had made the investment out of his own means instead of the means of others, thereby enriching his children at the expense of his creditors, a chancellor would have subjected the income to the extent of the enhanced value to the payment of his debts, and when he induces others to invest their means in improving property for the benefit of those who have the right to look to him not only to see that their property is so managed as to make it productive, but whose claims upon him for support and maintenance can not be disregarded, we see no reason why, if it results in enriching the children, or so enhancing the value of their property as to increase the income of their estate, those making the improvements should not at least share with them in the increased income caused by the improvements made.

Are the infants to become the recipients of such an investment from the funds of a stranger upon the idea that it was a voluntary donation from the father, and the material man or laborer required to look to him for payment? Will that which enhanced the value of the building and the income from it be regarded as an unreasonable burden upon the property of the infants, when the contractor and builder asks only for an appropriation of a part of the increased income caused by his labor and material to the payment of his debt? He has worked no harm to the infants, but leaves them in a much better condition than they were before the improvement was made, and if so, ought the chancellor, in equity and good conscience, deny all relief? We think not. The

·guardian is entitled to the care and management of ·all the estate of the ward, real and personal, and ·by our statute may lease the real estate until the ·ward arrives at age, provided the lease is not for a ·longer term than seven years. (Sec. 6 of art. 2, chap. 48, Gen. Stat.) His leasing of the estate in this in- ·stance was for the benefit of the wards, and upon ·arriving at age, if the cost of the improvement from which these benefits flow has not been paid, the chan- ·cellor should adopt some means of reimbursing the expenditure when it works no other injury to the ward than taking from him a part of the income ·originating from the appellants' material and labor.

In the case of Graham v. Bank, 5 B. M., 45, the ·guardian of the infants, as in this case, leased a lot ·of ground in the city of Louisville to Dupont for a term of years, Dupont agreeing to build a house upon it at a cost of three thousand five hundred dollars, ·and to pay an annual ground· rent of two hundred dollars. The rent was paid to the guardian, and the ·building erected by the lessee. The children, or one ·of them, on becoming of age, repudiated the contract ·of leasing, and this court held that the child becoming ·of age, having received the ground rent, it would be inequitable to permit him to enter without making a fair remuneration to the extent the land had been actually and beneficially ameliorated.

In the case of Athey v. Knotts, 6 B. M., 24, where ·the father had made improvements on the land of ·his infant son that greatly enhanced its value, this ·court, referring to the case of Graham v. Bank, held ·that if the son, when arriving at age, should see proper

Bent & Co. v. Barnett.

to enter, "the vice chancellor, under all the circumstances, should require him to do what was equitable in regard to the improvements, and until that period the creditor of the father was entitled to an equitable portion of the rent, to be applied in discharge of his claim."

In Hobbs v. Harlan, 10 Lea, 268, it was said: "If a guardian, with the view to increase the annual rents of his wards, put improvements, such as houses, upon their land, he will be allowed to reimburse himself for the principal sum thus expended, without interest, out of the increased rentals, but not out of the corpus of the estate or the ordinary rentals." The fact that the children are now of age, and in possession, can make no difference. If the appellants have an equitable claim upon the rents of this property, it should be enforced. It was expressly agreed in writing that these parties should have a lien, or become entitled to the rents in discharge of the debt, and their right to file a notice, etc., of an intention to assert a lien, or the evidences of their debt, as required by the mechanic's lien law, was expressly waived; that is, the appellants were to have a lien whether they filed their claim or not; and while this could not affect others, it was binding, as between the guardian and the appellants, to the extent they could contract.

The vice-chancellor, in his judgment rendered in 1878, recognized the existence of these liens, and the right of the creditors to the rents. The lease had seven years to run from its date, and at the expiration of the seven years the chancellor's judgment, to the extent it had gone, had performed its functions,

but the rents paid no part of appellants' debt. It was not a final judgment, that is, a judgment determining that if the seven years' lease fails to pay you, the creditors are without remedy. The original agreement with the guardian as to liens and the right to the rents until the debts were satisfied still existed, and while it was not binding on the infants, the original judgment enforced the lien, and gave to the appellants the benefit of the lease upon equitable grounds. While there is no question before the court except as to the supplemental petition, that petition is based on the facts developed in the original case, and the judgment rendered upon these facts. It is apparent that the estate of the infants (now adults) can not be burdened with the interest accruing on these notes, nor should they be compelled to pay more than the actual cost of furnishing the stone for which the notes were given, without interest, and this should be paid out of the enhanced rental value of the property by reason of the improvements, after deducting therefrom the insurance, taxes and cost of keeping the premises in repair.

These views upon the facts presented in the original action are not to preclude any defense the appellees may have to the recovery. We simply adjudge that the facts stated, if true, entitle the party to relief, and if no defense exists, it should be granted as herein indicated.

Judgment reversed, and remanded with directions to overrule the demurrer, and for proceedings consistent with this opinion.