MUSKOGEE DEVELOPMENT CO. *et al.* v. GREEN *et al.*

No. 829, Ind. T.    Opinion Filed September 16, 1908.

(97 Pac. 619.)

INDIANS—Allotments—Leases—Accounting.    An allotment of an infant without a legal guardian, living with his father, who is his natural guardian, having been leased by said natural guardian at the rate of 25 cents per acre per year for a period of five years, and for improvements to be made thereon, to consist of breaking, fences, and houses, benefiting such estate, said contract having been entered into in good faith by all parties thereto, believing it to be a substantially fair contract and authorized under the law, said father, afterwards having been appointed as legal guardian, requdiating said contract, the value of such improvements will be allowed out of the rents in an accounting.

Kane, J., dissenting

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory.*

Action by the Muskogee Development Company and others against Dora Green and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

This suit was instituted on the 1st day of January, A. D. 1905, by the plaintiffs in error, as plaintiffs, against the defendants in error, as defendants, and it grew out of the following condition of facts:

On August 16, A. D. 1902, or eight days after the promulgation of the Supplemental Creek Agreement, R. B. Hutchinson entered into a five-year agricultural lease with the defendant David Green, who was the father of the other two defendants, Dora Green and Esther Green, which agricultural lease covered the allotments

of the two children named, and together made up the W. ½ of section 27, township 12 N., range 16 E., of the Creek Nation of Indian Territory. It clearly appears from the evidence that at the time Hutchinson made this contract with the father of these children he believed that the Supplemental Agreement authorized the father to make such a contract. In fact, such was the universal belief in the Creek Nation at that time, and a very large part of the legal fraternity entertained the same opinion. Subsequently the court decided that such a contract was invalid. *Indian Lands & Trust Co. v. Shoenfelt*, 5 Ind. T. 41, 79 S. W. 134. Under the contract in question Hutchinson proceeded to place valuable improvements upon the premises, amounting to the sum of $654.11 on the Dora Green allotment and $696.61 on the Esther Green allotment, paying annually, in addition to these improvements, a cash rental of 25 cents per acre for the land, which was a fair rental for unimproved lands in the Creek Nation at that time. In April, 1903, Hutchinson transferred a three-fourths interest in these leases to his coplaintiff, the Muskogee Development Company, retaining an undivided one-fourth interest in them. The Muskogee Development Company repaid him for the improvements he had put upon said land, and proceeded to put the same in cultivation.

No protest of any kind was made from any source until the fall of the year 1903, when David Green, who had entered into the original contract as father and natural guardian of his two children, procured himself to be appointed by the United States Court for the Western District of Indian Territory as legal guardian of said children, and made application to the United States Indian agent to have the plaintiffs and their tenants put off the land. Mr. Hutchinson thereupon took a new contract from him, which he signed as legal guardian, and which contract is set out in the printed record, and ran for a term of one year, but was not approved by the court and no authority was obtained to make the same, although plaintiffs paid $200. It is attempted to be shown on the part of the defendants that the entering into of this con-

tract was a complete settlement of all matters between the parties in interest; but, in the light of the testimony of Mr. Hutchinson and of Mr. Plummer, who had no interest whatever in the matter, it is clear that this contract was entered into so far as plaintiffs were concerned simply to prevent being summarily thrown off the premises in controversy and that they regarded the $200 which they paid as "blood money." The testimony of Green himself shows that he never had any other agricultural contract upon the land in question until he entered into this contract in August, 1902, with Hutchinson, and that prior to the institution of this suit he had ousted the plaintiffs, taken possession of Dora Green's allotment and put a tenant of his own thereon, and had also taken possession of Esther Green's allotment and put a tenant upon it, all of which occurred about the beginning of the year 1905.

It was because of being thus ousted, and in an endeavor to get some compensation for the valuable improvements they had in good faith placed upon the premises in controversy, that the plaintiffs instituted this suit and applied for the appointment of a receiver, to the end that the rents and profits arising from the land might be collected, and that out of such rents and profits they might be paid for the actual betterments they had put upon the property, and which gave the property a rental value in excess of 25 cents per acre per annum, and in this way work out through the medium of a court of equity a result which, under the rulings of the court, could not be obtained in any other way. The court in October, 1905, appointed a receiver, who never qualified, and thereafter, on the 11th day of November, another receiver, having been appointed on the 7th day of that month, did qualify, and was authorized to rent the premises.

The cause was referred to the master in chancery, and on the 28th day of March, 1906, after having taken testimony, much of which is not particularly intelligible, the master filed his report, in which he made the following findings of fact and recommendations:

"Finding of Facts.

"(1) That the Muskogee Development Company is a corporation duly organized and existing under and by virtue of the laws in force in the Indian Territory.

"(2) That the defendant David Green is the father of Dora and Esther Green, minors, and is their legal guardian.

"(3) That on the 16th day of August, 1902, the said David Green was the natural guardian of said minors, and as such natural guardian demised and let unto the plaintiff R. B. Hutchinson the allotments of his children, Dora and Esther Green; the allotment of Dora Green being the N. W. 1/4 of section 27, township 12 N., range 16 E., and that of Esther Green being the S. W. 1/4 of section 27, township 12 N., range 16 E., for agricultural purposes, for a term of five years from the 1st day of April, 1903.

"(4) That the plaintiff R. B. Hutchinson took possession of said premises in the year 1902, and placed thereon valuable improvements, which improvements have benefited the allotments aforesaid and are of the description and value as follows:

"On the allotment of Dora Green:

| | |
|---|---|
| Breaking 150 acres of land | $150 00 |
| Drilling well | 34 87 |
| Building and fencing in | 469 24 |
| | $654 11 |

"On the allotment of Esther Green:

| | |
|---|---|
| Breaking 11 or 12 acres of land | $111 50 |
| Drilling well | 35 40 |
| Buildings and fences | 549 71 |
| | $696 61 |

"(5) I find that at the time of the making of said rental contract the said Hutchinson executed said contract believing that said David Green had full power as natural guardian of said minors to lease said land.

"(6) That the improvements as aforesaid were placed upon said allotments of said minors by the said Hutchinson under said belief.

"(7) That prior to the 1st day of April, 1903, said R. B. Hutchinson assigned all his interest in said lease of August 16, 1902, to the Muskogee Development Company, and guaranteed the validity of the same.

"(8)   That the Muskogee Development Company took possession of said allotments upon the 1st day of April, 1903, and paid R. B. Hutchinson for said improvements placed thereon by him.

"(9)   That the said Muskogee Development Company took possession of said premises believing that David Green had full power as natural guardian of said minors to lease said lands on said 16th day of August, 1902.

"(10)   That R. B. Hutchinson, plaintiff, had no interest in said lease after said assignment, excepting that he was to be paid a sum equal to one-fourth of the profits arising therefrom.

"(11)   That on October 23, 1903, David Green, as legal guardian, demised and let unto said R. B. Hutchinson the aforesaid allotments of his wards for the sum of $200 for the term of one year.

"(12)   That the plaintiffs have been in the possession of said premises during the years of 1903 and 1904.

"(13)   That a reasonable rental value for that part of said allotments in cultivation was and is $2 per acre.

"Conclusions.

"From the foregoing facts I am of the opinion and conclude:

"(1)   That the plaintiff R. B. Hutchinson entered into said contract with David Green as natural guardian of said minors under the belief that said David Green had full power to lease said premises, and that he placed valuable improvements thereon as hereinbefore set forth under such belief, and that the assignee of said lease, the Muskogee Development Company, took possession of said premises under the same belief.

"(2)   That the rental contract entered into between David Green, legal guardian, and R. B. Hutchinson, on October 23, 1903, in no way affected the rights of the Muskogee Development Company.

"(3)   That the defendant David Green, as legal guardian of Dora and Esther Green, should be charged with the reasonable value of said improvements made thereon under the rental contract of August 16, 1902, and should be credited with the reasonable rental value of said allotments during the term of occupancy by the plaintiffs.

"Recommendations.

"I therefore recommend that the court enter a decree herein directing the defendant David Green, as guardian of Dora Green, to pay unto the Muskogee Development Company the sum of $54.11, the said sum of money being the excess of the reasonable value of the said allotment of Dora Green during plaintiffs' term of occupancy, and in default thereof that the said Muskogee Development Company have possession of said allotment for a sufficient period of time to fully compensate it for said excess amount of the improvements over and above said rental. That the defendant David Green, as the guardian of Esther Green, be directed to pay to the plaintiff the Muskogee Development Company the sum of $250.61, said amount being in excess of the reasonable value of the improvements placed on the allotment as aforesaid, over and above the reasonable rental value thereof during the plaintiffs' term of occupancy, and that the plaintiff the Muskogee Development Company have the possession of said allotment of Esther Green for a sufficient length of time to fully compensate it for the said excess amount of improvements over and above said rental value. Although this report is of date March 16, 1906, it must be considered as of the date of the introduction of the evidence as appears in the transcript thereof, which was on February 10, 1905, as the master has nothing before him on which to base a report on matters subsequent to that date."

The decree of the court was rendered on the 5th day of May, 1906. It does not undertake to make any special findings, but simply sets aside the master's report and orders the case dismissed for want of equity

*Preston C. West* and *William M. Mellette,* for plaintiffs in error.

*A. S. McRea,* for defendants in error.

WILLIAMS, C. J. (after stating the facts as above). The only question necessary to determine is whether or not the court erred in ordering that this cause be dismissed, and the receiver discharged, and the property involved in this controversy placed in the possession of the defendants in error. The law, in its wisdom and comprehensiveness, throws around infants and minors every possible protection; but the question is presented here that when

such infant or minor receives the benefit of an invalid contract, and such benefit is permanent and substantial and continuing with such minor, whether or not the law permits the party causing such benefit to accrue, parting with his consideration in good faith, believing that he is acting within the pale of the law, to be recompensed therefor, when such minor in a lawful way seeks to avoid the obligations of such contract. There is an unbroken line of authority that where a minor makes contracts, and gets the benefits thereof, he will not be permitted, with such benefits in hand, to disaffirm said contract, without making a proper tender or offer to refund when so within his power. *Stull v. Harris,* 51 Ark. 294, 11 S. W. 104, 2 L. R. A. 741; *American Freehold Land Mortgage Co. v. Dykes,* 111 Ala. 178, 18 South. 292, 56 Am. St. Rep. 38; *Craig v. Van Bebber,* 100 Mo. 584, 13 S. W. 906, 18 Am. St. Rep. 569; *Englebert v. Troxell,* 40 Neb. 195, 58 N. W. 852, 26 L. R. A. 177, 42 Am. St. Rep. 665.

There is another class of authorities to the effect that where a void contract becomes executed, and a party acquires a possessory right thereunder, the other party thereto cannot retain the consideration for same, and at the same time repudiate and avoid the contract so as to recover such possession, and courts of equity will not cancel such contract without requiring the person that has received the consideration to make proper recompense to the other party. *White v. Brown,* 1 Ind. T. 98, 38 S. W. 335; *Poplin v. Clausen,* 1 Ind. T. 157, 38 S. W. 974; *Wrought Iron Bridge Co. v. Town of Utica et al.* (C. C.) 17 Fed. 316; *Beard v. Dansty,* 48 Ark. 183, 2 S. W. 702; *Potts v. Cullom,* 68 Ill. 217; *Brockway v. Thomas,* 36 Ark. 518.

The case of *Shumate v. Harbin,* 35 S. C. 521, 15 S. E. 270, is substantially in point. Mr. Justice Pope, speaking for the court said:

"The demurrer presents the very serious question here. It belongs to that class of cases that appeal very directly to the conscience of the court. Shall one be allowed to enjoy the property of another, and he a stranger, without any compensation therefor?

Or, to put the matter in a different form, shall property that was useless to one be made to increase in intrinsic value and become the source of constant profit, through the expenditure of the means of another, innocently made, without creating a legal necessity, whereby the owner is made to compensate him through whom the improvements were made? Quite often has this question been presented by one tenant in common, who has added largely to the value of the common stock by the expenditure of his own means, in a contest with other co-tenants. In the case of *Buck v. Martin,* 21 S. C. 592, 53 Am. Rep. 702, this court announced: 'Our cases have settled the question against the right of the improving tenant in common to the exclusive benefit of his improvements'— citing an array of authorities in support of such conclusions. In the same case this court goes on to say: 'To this rule, however, there are well-established exceptions. * * * When, however, improvements have been erected by a co-tenant. which add value to the common stock, and erected under the circumstances which would make it a great and obvious hardship upon the improving tenant to deprive him entirely of the benefit of such improvements, throwing their whole value into the common estate for partition, the disposition of the court of equity has always been to give the improving tenant the benefit thereof, so far as consistent with the equity of his co-tenants. 1 Story, Eq. Jur. § 655.' To the same effect was the decision of this court in the case of *Lewis v. Price,* 3 Rich. Eq. (S. C.) 173. The result of all the cases bearing upon this relief, peculiar to courts of equity, is that it is not what such improvements may have cost in dollars and cents that is allowed, but what additional value has been imparted to the premises by such improvements. *Lewis v. Price, supra..* The court said: 'At the same time I am content, in this case, that the tenant shall have credit, *not for the cost of improvements,* but *for the value they imparted to the premises.'* (Italics ours.)

"The principles announced in the foregoing cases were made to apply, notwithstanding some of the co-tenants were infants. We acknowledge these are cases between co-tenants. They are cited by way of illustration of certain principles of equity. Let it be remembered, also, that the improvements, in these cases referred to, were made without the sanction of the court in the first instance. In the case of *Buck v. Martin, supra,* this court said: 'We do not regard the rule that the improving co-tenant is not entitled to compensation as applying to all the cases where all the

co-tenants concur in the improvements.   From the peculiar circumstances of this case we must regard it as belonging to that class of cases.   It is true that the children were minors at the time improvements were made, and could not consent for themselves; but they were with their mother, and the family needed a home.   Indeed, it was absolutely necessary.   If at the time an application had been made to the court for leave to build a little cottage on the common property as a shelter for the family, can there be a doubt that such application would have been granted by the court acting for the children?   *Ex parte Palmer,* 2 Hill, Eq. (S. C.) 218; *Corbett v. Laurens,* 5 Rich. Eq. (S. C.) 316.   Then we regard that done which should have been done.   It was not the legal duty of the mother or her husband (stepfather) to support the children without the use of their shares.

"Recurring to the case at bar: Here was a destitute family, consisting of mother, stepfather, infant son, not only without money, but homeless.   It was not the duty of the mother and stepfather to support the infant son.   *Buck v. Martin, supra; Lewis v. Price, supra.*   The son was only 10 years of age, with no general or testamentary guardian; but his mother was his guardian by nature.   As such, in the absence of one appointed by law, the mother is naturally expected to fill that office, and thousands of boys and girls, bereft by death of a father's care and protection, rise up and proclaim their mother blessed.   By nature and education timid and retiring, when the interests of the fatherless need her protecting care, all obstacles are surmounted, all dangers bravely met.   Under these circumstances the plaintiff builds a modest home for their occupancy, believing the title in the mother.   What before was useless, because untenantable, by the labor and means of plaintiff expended thereon, becomes not only a home fit for their occupancy, but, when not so used by them afterwards, it becomes a source of revenue.   Sixty dollars per year is its rental value.   Now, because it was not Mrs. Harbin's land, because the plaintiff made a mistake, because she is not her son's legal guardian, because she is not a tenant in common with him, because she is not administrator or executor of the estate of his father—because of these things, must this plaintiff lose all compensation for this work?   We do not think so.

"This court, in the case of *Spencer v. Godfrey,* Bailey, Eq. (S. C.) 468, held that when the mother, who was the administratrix of the estate of her deceased husband, applied to the court

in an *ex parte* petition, alleging that it was necessary to borrow money to pay debts and support her children, and for that purpose that a mortgage should be placed upon the land belonging to the estate of the intestate, and the court of equity granted such relief, it did not lie in the power of one of the children afterwa ds to upset such an act of the court. The court of equity has jurisdiction over the persons and estates of infants. The result of the decision seems to be that what the court of equity would have done in the first instance upon application therefor, if the same be done without authority, the court will afterwards, upon the propriety of such course being made manifest, confirm such act. *Ryan v. Bull*, 3 Strob. Eq. (S. C.) 91; *Corbett v. Laurens*, 5 Rich. Eq. (S. C.) 316; *Ex parte Palmer, supra.* That there was a mistake in the character of the person who made the contract will make no difference. It is substance, not form, which the court of equity regards. *Cater v. Eveleigh*, 4 Desaus. 19, 6 Am. Dec. 596; *James v. Mayrant*, 4 Desaus. 591, 6 Am. Dec. 630. But, while so holding, we must be clearly understood to decide that not the cost of such improvements, but the value they impart to the premises, is the true rule. The property should be rented by the master of Greenville county, and, after the payment of the master's fees and all taxes the residue of such rent should be paid over to the plaintiff until he shall receive his debt of $149.54, and, when the plaintiff shall have been so satisfied, the property shall be rented for the benefit of its owner, Michael J. Roberts, until he obtain a guardian to manage same, or reaches the age of 21 years. We feel constrained, however, in this instance to instruct that there shall be no costs taxed against the infant defendant. It is the judgment of this court that the judgment of the circuit court be reversed, and the cause remanded to the circuit court, with directions that the principles of this decree be duly enforced in that court."

In the case of *Athey et al. v. Knotts et al.*, 45 Ky. 29, Judge Breck, speaking for the court, said:

"The allegation in the complainant's bill is that the improvements made are lasting and valuable, and the fair presumption is that the property of the son is thereby rendered more productive. They have not been made by a trespasser, but by the natural guardian of the infant, who has a right, in the absence of a statutory guardian, to control and manage his estate, and to

the extent that it has been rendered more productive by the improvements, to enjoy the benefit thereof, at least during the son's minority, and which it is alleged he is now enjoying. Assuming, then, that Elisha Athey, by reason of the improvements which he has made, is entitled to a portion of the rent, it seems to us that the chancellor has power to reach such interest and apply it to the discharge of the complainant's judgments. We have a right to presume that the improvements have been made with a view, and that they will permanently enhance the value of the son's estate, independent of the immediate enjoyment and benefit therefrom contemplated by the father. When the son arrives at age it may be proper to rule him to an election to pay such sum as the improvements may, at that time, add to the value of the estate, or surrender such portion of the annual rent as may be equitable, taking into consideration the increased value thereof by reason of the improvements, or that they (the improvements), should be removed. How far he should be tolerated in a capricious election for the removal of the improvements, when obviously for his interest, as well as the creditor's, that they should remain upon equitable terms, need not now be decided. We are not satisfied that the chancellor should not exercise a controlling discretion in that respect. In *Graham & Butler v. Chatoque Bank,* 5 B. Mon. (Ky.) 45, this court decided that if a ward, upon arriving at age, should elect to enter upon a lot before the expiration of a lease thereon, made by the guardian, and beneficially to the ward, he should be held responsible for a fair remuneration for improvements which had been made by the lessee under and as part of the contract with the guardian. So in this case, should the son elect to enter upon arriving at age, the chancellor, under all the circumstances, may require him to do what may be equitable in regard to the improvements. Until that period we are of the opinion the complainant is entitled to an equitable portion of the rent, to be applied in discharge of his claim. The chancellor should direct such facts to be ascertained and reported as will enable him to determine to what extent the rent should be so applied. We think the chancellor has power to direct the premises to be rented out, and to retain the case, if necessary, until Lee Athey arrives at age, and longer, if the equity of the case should require."

In the case of *Bent et al. v. Barnett,* 90 Ky. 600, 14 S. W. 597, the court held that where a guardian of minor children in good faith, but without authority from the chancellor or proper

court, reconstructed an old building on the children's land, which enhanced the value of the property and enabled them to realize an income therefrom, the materialmen, whose property had been in good faith used in making the improvements, were equitably entitled to be paid the actual cost of their material out of the enhanced rental value of the property by reason of the improvements, after deducting therefrom the insurance, taxes, and costs of keeping the premises in repair.

The statutes in force in the Indian Territory prior to November 16, 1907, and uniformly throughout the American states, require a guardian, seeking to make expenditure in behalf of his ward, to obtain the authority of the probate court therefor; but in many instances, for want of proper advice, or because the court was not in session, or from ignorance on the part of such guardian, expenditures have been made without any previous authority having been obtained from the court. When such matters came before the court, if it was satisfactorily shown that they were for the benefit of the infant and that said infant had derived a benefit therefrom, the courts, looking to the substance, rather than the form, allow the guardian credit on his account for the amounts actually expended for the benefit of the infant. *Calhoun v. Calhoun,* 41 Ala. 370; *Waldrip v. Tulley,* 48 Ark. 297, 3 S. W. 192; *Martin v. Campbell,* 35 Ark 137; 21 Cyc. pp. 65, 66. In the Indian Territory, prior to its admission as a part of the state of Oklahoma, the father was the natural guardian of his minor child, and entitled to his custody, and also that of his property, when there was no legal guardian. Mansf. Dig. § 3465 (Ind. T. Ann. St. 1899, § 2361).

The land, that was without an income, because neither fenced, nor in a state of cultivation, nor improved with houses, barns, and the like, became, no doubt, in this instance a profitable, productive farm, fit for the husbandman and yielding revenue; certainly becoming a source of revenue—the rental value thereof being found by the referee to be $2 per acre per annum. Because of the fact that plaintiff in error, as well as the natural guardian, erroneously

believed that under the Creek Supplemental Agreement the defendant in error, as the natural guardian of his children, had a right to enter into said lease for the benefit of said children, must the expenditures and improvements made by said plaintiff in error under the terms of such lease, at the instance of the natural guardian, who thereafter as legal guardian seeks to repudiate such agreement, for the breaking of land, building of fences, and furnishing material and erecting houses thereon for the permanent benefit of such children, be a loss to him? What was unproductive prairie became a crop-yielding farm. Allotments that had no place of habitation thereon were made an abode for the industrious, affording shelter from the rains and storms and protection from the winter's rigors and the summer's heat. Had the defendant in error, as the legal guardian of his children, applied to the proper court for permission to make an improvement lease upon their raw allotments, the same under proper and legal regulations would have been permitted, allowed, and approved.

Section 3500, Mansf. Dig. (Ind. T. Ann. St. 1899, § 2396), is as follows:

"If any ward be the owner of wild or unimproved lands, not connected with any cultivated or improved tract belonging to such ward, the guardian may, under the advice and instruction of the court, let out such unimproved land under improvement lease, not to extend more than two years beyond the majority of such ward."

Section 17 of "An act to ratify and confirm a supplemental agreement with the Creek tribe of Indians, and for other purposes" (Kapler, Indian Affairs, Laws, and Treaties [2d Ed.] vol. 1, p. 762; Act. June 30, 1902, c. 1323, 32 Stat. 504), provides:

"Creek citizens may rent their allotments for strictly nonmineral purposes, for a term not exceeding one year for grazing purposes only, and for a term not to exceed five years for agricultural purposes, but without any stipulation or obligation to renew the same. Such lease for a period of longer than one year for grazing purposes and for a period longer than five years for agricultural purposes, and leases for mineral purposes, may also be made with the approval of the Secretary of the Interior, and not otherwise. Any agreement or lease of any kind or character vio-

lative of this paragraph shall be absolutely void and not suscept-
ible of ratification in any manner and no rule of estoppel shall
prevent the assertion of its validity.    *    *    *  "

The rental for grazing purposes, where no improvements, such
as breaking sod, or grubbing stumps, or building houses or barns,
are required, is limited to one year; but for agricultural purposes,
where the land necessarily, except in exceptional cases, must be
broken and sodded, cleared and grubbed, and houses and barns
built, is limited to five years; but, recognizing in some events that
the improvements must require a lease in excess of five years, it
is provided that in such event the same shall be valid only upon
the approval of the Secretary of the Interior. These treaties were
made with a view of consummating the allotment of the lands in
severalty among the members of the Creek tribe. It was recognized
that a great many of them would not have lands improved from
which to select their allotments, and for this purpose it was con-
templated that improvement leases might be made, not only for
the benefit of the Indian, by causing him to have an allotment in
cultivation and yielding an income, but also to give his noncitizen
neighbor an opportunity to engage in agriculture and aid in the
development of the country. What were the limitations thereon?
Where the provisions of this treaty conflict with said section 3500
of Mansfield's Digest, *supra,* the treaty prevails. Consequently, un-
der the law an allottee of the Creek tribe had a right, if he was an
adult, to enter into an agricultural lease for a period of five years,
and if the allottee was a minor the probate court had jurisdiction
and authority to permit the guardian to enter into an improvement
lease for the benefit of such minor, not to exceed the period of five
years; but with the approval of the Secretary of the Interior it
might exceed the five-year period, provided that it did not ex-
tend two years beyond the majority of the minor.

A court of equity, seeking to do substantial justice, will do
what the court ought to have done. In doing so, however, the
plaintiff in error is not entitled to recover the cost of such im-
provements, unless the same imparted an additional value to such

allotments equal to such cost, and caused a commensurate increase in the income from such allotments as would make the investment profitable and beneficial to such minors and permanent. Such contracts should be critically scrutinized by the courts, so as to vouchsafe that they are reasonable and necessary, and for the best interest of the minor, at the same time adding to the value of his allotment; and whilst seeing that substantial justice is done to the party that makes the outlay for the minor, it should also be careful that such compensation is merely a matter of recompense. Looking to the substance, rather than to the form, doing justice between all parties where a benefit has been done and is permanent, and causes an increment in the value of the estate of the infant, increasing his income and thereby providing for his maintenance, a court will see that the income from such estate should be made to render recompense for the outlay that has been made to bring about that result.

This cause is reversed and remanded, with instructions to the lower court to refer this cause back to the referee for additional findings, and to proceed in accordance with this opinion.

Dunn, Hayes, and Turner, JJ., concur. Kane, J., dissents