## COCHRAN v. NORRIS et al.

No. 26194.   Oct. 29, 1935.

Rehearing Denied Dec. 3, 1935.

Melton & Melton, for plaintiff in error.

Bailey & Hammerly, for defendants in error.

PER CURIAM. This was an action filed in the district court of Grady county by Grover Cochran, an incompetent, by J. J. Cochran, his guardian, against C. N. Norris, C. C. Ward, and Irvin Polson, to cancel a certain mortgage on real estate, together with notes thereby secured, and to quiet title to said property. Mrs. Cecilia Cochran, having succeeded J. J. Cochran as guardian of Grover Cochran, was substituted as plaintiff

while the cause was pending in the district court.

The parties will be referred to as they appeared in the trial court.

On May 7, 1923, Grover Cochran was adjudged incompetent by the county court of Grady county, and J. J. Cochran was appointed guardian of his estate. At the time of the trial in the district court, he was still incompetent and was confined in an insane asylum. Grover Cochran is a Chickasaw Indian allottee, one-eighth blood, and was 37 years of age on September 5, 1932. The lands described in plaintiff's petition are a part of the lands allotted and patented to him by reason of his citizenship in the Chickasaw Tribe of Indians. The title to the property had not passed from the incompetent since it was allotted to him. On August 15, 1925, the guardian filed in the county court of Grady county a petition for authority to mortgage the land of the incompetent, as follows:

"The petition of J. J. Cochran, guardian of the estate of Grover Cochran, incompetent, respectfully represents and shows that he is the duly qualified and acting guardian of Grover Cochran, incompetent, and that said incompetent is the owner of the following described real estate in Grady County, Oklahoma: N. W. ¼ of S. E. ¼ and S. W. of S. E. ¼ and S. E. ¼ of S. E. ¼ of sec. 26 twp. 3 N., range 5 W., Grady County Oklahoma.

"That a drainage ditch constructed through said property causes the estate of said incompetent to be indebted to C. N. Norris and C. C. Ward in the sum of $1,447; that there is not sufficient cash money in guardian's hands belonging to said estate to pay said indebtedness.

"Wherefore, your petitioner prays the court to grant authority to J. J. Cochran, guardian, to mortgage said real estate in the sum of $1,447 for the purpose of paying said debt.

"Dated this 15 day of August, 1925.
"J. J. Cochran, Guardian."

On August 25, 1925, the county court entered the following order:

"Now on this 25 day of August, 1925, the petition of J. J. Cochran, guardian for the estate of Grover Cochran, incompetent, came on for hearing and it being proven that notice of said hearing had been given as required by law, and that the best interest of the estate demands the mortgaging of the property.

"It is therefore ordered, adjudged and decreed by this court, that said J. J. Coch-

an, as guardian of Grover Cochran, incompetent, is hereby authorized and empowered to execute a mortgage upon the real estate be'onging to said incompetent and described as follows: N. W. ¼ of S. E. ¼ and S. W. ¼ of S. E. ¼ and S. E. ¼ of S. E. ¼ of section 26, twp. 3 north, range 5 west, Grady county, Oklahoma, to the amount of $1,447 payable in ten yearly installments beginning January 1, 1929, bearing 6% interest from date, and that said amount be applied to pay the indebtedness now existing on said real estate.

"Witness my hand and the seal of said court the 25 day of August, 1925.

".J. E. Shelton, County Judge. (Seal)"

On October 1, 1925, J. J. Cochran, as guardian of Grover Cochran, executed to C. N. Norris and C. C. Ward a mortgage on the above land to secure notes executed on that date by the guardian in the sum of $1,447.

The petition for the creation of Rush creek drainage district was filed with the board of county commissioners of Grady county in September, 1924, and an order confirming viewers' report entered by the county commissioners January 5, 1925. The report of the viewers apportioned $1,559 of the benefits to the lands of Grover Cochran. The record does not disclose when the construction was started. Norris and Ward, after the assessments had been made on the lands of the incompetent, paid the amount of the assessments to the county treasurer. The notes and mortgage were executed by the guardian to take up the amount of the assessments. The ditch was not completed through Grover Cochran's land when the mortgage and notes were given. They were put in escrow and delivered after the ditch through his farm had been completed. Norris and Ward sold and transferred the notes and mortgage to Irvin Polson after the ditch had been dug through Grover Cochran's farm, but before completion of the entire drainage district work. Polson knew when he purchased the notes and mortgage that they had been executed by the guardian to take up this assessment for drainage district.

The plaintiff contends: (1) That the assessment was a tax; (2) that the allotment of this incompetent was nontaxable; (3) that the order of the county court purporting to authorize the guardian to execute the notes and mortgage was void for the reason that the county court was without power or authority to authorize the guardian to execute the same; (4) that the mortgage creates a cloud on the title to the lands of the incompetent; (5) that plaintiff has no adequate

remedy at law and is entitled to a decree canceling the notes and mortgage and quieting the title to the property in plaintiff.

The defendants contend: (1) That the assessment is not a tax; (2) that the notes and mortgage were executed in payment for improvements placed on the premises at the direction and with the consent of the plaintiff; (3) that plaintiff has an adequate remedy at law and is not entitled to maintain an equitable action to quiet title; (4) that the maxim "he who seeks equity must do equity" is applicable and plaintiff is not entitled to any relief, plaintiff having failed to offer to refund or restore the benefits received by plaintiff.

The district court found, adjudged, and decreed that plaintiff was not entitled to the relief for which he prayed.

Plaintiff assigns as errors: (1) That the trial court erred in overruling plaintiff's motion for new trial; (2) that the trial court erred in rendering judgment denying plaintiff any relief and declining to cancel the notes and mortgage. Plaintiff presents these assignments of error under two propositions:

"(1) The notes and mortgage were void and not enforceable against the estate of the incompetent, and created an apparent lien on the lands.

"(2) The plaintiff's petition alleged a cause of action to remove a cloud on the title."

We now turn to the question of whether the lands of this allottee are taxable. Under the provisions of the Atoka Agreement embodied in the Curtis Act of June 28, 1898, 30 Stat. 505, 507, ch. 517, sec. 29, the lands allotted to the Choctaw and Chickasaw Indians "shall be nontaxable while title remains in the original al'ottee, but not to exceed 21 years from the date of the patent." The Supreme Court of the United States, in Choate v. Trapp, 224 U. S. 665, 56 L. Ed. 941, 32 S. Ct. Rep. 565, held that the lands of Choctaw and Chickasaw allottees were not subject to ad valorem taxes, although the restrictions upon the lands had been removed by Act of Congress, May 27, 1908 (35 Stat. 312). It was held in that case that the nontaxability of the Choctaw and Chickasaw allotments was a property right vested in the Indian, and that the same was binding upon Oklahoma and could not be abrogated by the Act of Congress of May 27, 1908; that the exemption from taxation was a separate and distinct matter from nonalienability; that the first conferred a right, and the second imposed a limitation.

We next pass to the question of whether or not a special assessment for a drainage ditch is a tax within the contemplation of the Atoka Agreement. Counsel has failed to cite any authorities on this question, but this court, in Board of County Commissioners of Garvin County et al. v. Dennis, 140 Okla. 204, 282 P. 457, held:

"Under the provisions of the Atoka Agreement embodied in the Act of Congress of June 28, 1898, by which the lands of the Choctaw and Chickasaw Indian allottees were to remain nontaxable while title remains in the allottee, but not to exceed 21 years from date of patent, an assessment for benefits for drainage purposes against the allotment of an unrestricted, intermarried member of the Chickasaw Tribe is void, when made while title remains in said member and within the 21-year period."

The court says in this opinion:

"While there is a distinction between an assessment for a special benefit and a general ad valorem tax, we are inclined to believe that no distinction was intended in the treaty with the Choctaw and Chickasaw Indians, known as the Atoka Agreement, which was later embodied in the Act of Congress."

And again:

"It has often been he'd that, in the interpretation of treaties and agreements with the Indians, where doubtful expressions are used, the same will be resolved in favor of the Indians, who are wards of the government, and that an entirely different rule is applied in the interpretation of such statutes as is applied where others than Indians are involved. It has been the uniform holding of the Supreme Court of the United States from the very beginning, as stated by Chief Justice Marshall, that 'the language used in treaties with Indians shall never be construed to their prejudice, if words be made use of which are susceptible of a more extended meaning.' It has also been the policy of our courts to interpret treaties with the Indians in the manner in which they (the Indians) understood them at the time the treaties were entered into.

"Following these general principles, we believe that, when the word 'taxation' was used in the Atoka Agreement, it included special improvements, and was so understood by the Indians at the time. One of the principal objects in making the lands nontaxable was to prevent the land being sold for taxes, and to relieve the Indians from burdens of taxation, and certain'y the same reason exists for making lands exempt from special assessments, which would more quickly deprive the Indian of his title than would general ad valorem taxes."

It will thus be seen that the lands of this incompetent were nontaxable and that the

special assessment for this drainage district was in fact a tax, attempted to be assessed or levied upon tax exempt real estate. The assessment was therefore void and of no force or effect.

Even if the lands had been subject to taxation, nevertheless the order of the county court authorizing the guardian to execute a mortgage thereon was beyond the power or authority of the county court, and void. Section 1267, Okla. Stat. 1931, provides:

"Renewal of Mortgage or Lien. The county judge may, upon verified petition supported by sufficient evidence showing that the best interest of the owners of the real estate affected requires it, by an order, grant authority to the administrators or executors of the estate of deceased persons or to the guardians of the estates of minors, incompetents or insane persons, to enter into contracts for and to renew or extend the time of payment of any mortgage or lien upon the real estate of such estate or ward, or to execute a new mortgage for the purpose of paying off and securing the release of any such mortgage or lien, provided that in no case shall such authority be granted, to mortgage, or contract for the renewal or extension of any mortgage for an amount greater than may be necessary to pay liens existing at the time such order is granted, including principal, interest, taxes and such reasonable expense as may be incident to perfecting such renewal extension or new mortgage."

In construing this section of the statute, this court, in Glover v. Warner, 135 Okla. 177, 274 P. 867, held:

"1. Under Comp. St. 1921, sec. 1260, the county judge is without judicial power or authority of law to make an order authorizing the guardian to execute a mortgage or other instrument creating a lien upon the property of his ward for the primary purpose of paying delinquent taxes against the land.

"2. 'Where the record in a case affirmatively discloses the facts to be such that such court is without power in such case to make the order or decree it assumes to make, the same is void, and therefore subject to collateral attack for want of jurisdiction to the extent, at least, that such court is without power to make the same.' Roth et al. v. Union Natl. Bank et al., 58 Okla. 604, 160 P. 505."

See, also, Roth v. Union Nat. Bank, 58 Okla. 604, 160 P. 505; Yawitz v. Hopkins, 70 Okla. 158, 174 P. 257; McPhaul v. Franklin, 121 Okla. 162, 249 P. 293; Lee v. Tonsor, 62 Okla. 14, 161 P. 804.

In Enid v. Warner-Quinlan Asphalt Co., 62 Okla. 139, 161 P. 1092, the court says:

"A contractor is charged with knowledge of the law under which a contract for paving streets of a city may be entered into, and one who contracts to pave streets of a city, in consideration of receiving assessments against abutting property of the streets paved, in payment of such paving, should, prior to entering into such contract, ascertain whether or not such assessments are enforceable, and upon failure to do so acts at his peril."

Section 591, Okla. Stat. 1931, provides:

"Action to Quiet Title—Joinder with Action to Recover Possession. An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession."

Certainly the defendants claimed an estate or interest in plaintiff's allotment by virtue of this mortgage. In the case of Gerlach Bank v. Allen, 51 Okla. 736, 152 P. 399, an action was brought to quiet the title of the plaintiff in and to her homestead and to remove an apparent cloud by reason of a judgment of record. The court in this case holds:

"In an action to quiet title, where the petition alleges that the plaintiff is the owner in fee and in the actual peaceable possession of the property in controversy, describing the premises, and that the defendant claims an interest therein adverse to the plaintiff, by virtue of a certain judgment, and said judgment creates a cloud on the title thereto, it states a cause of action."

See, also, Ziska v. Avey, 36 Okla. 405, 122 P. 722; Lawrence v. Estes, 29 Okla. 328, 116 P. 781; Turner v. McNeal, 118 Okla. 238, 247 P. 39.

It is contended by the defendants that plaintiff has an adequate remedy at law in that he could wait until sued upon the notes and mortgage and then urge his defense. The defendant cites as authority for this proposition Trimble v. Minnesota Thresher Mfg. Co., 10 Okla. 578, 64 P. 8, but this opinion is not in point, as it involves personal property and not real estate. The statute above quoted authorizes the action filed by plaintiff herein.

It is urged by the defendants that he who seeks equity must do equity, and that plain-

tiff must reimburse the defendants for the "benefits" received by plaintiff before p'aintiff would be entitled to the relief for which he prays in his petition. In support thereof, the defendants cite Muskogee Development Co. v. Green, 22 Okla. 237, 97 P. 619, and Galloway v. Loffland, 144 Okla. 176, 289 P. 774. Neither of these cases is analogous to the case at bar. In the case of Galloway v. Loffland, no minors or incompetents were involved. The maxim urged by defendant is the general rule applied to persons competent to contract. See Buzard v. Houston, 119 U. S. 347, 7 S. Ct. Rep. 249; McIndoo v. Brown et al., 125 Okla. 88, 256 P. 743; Whitehead v. Stephens, 54 Okla. 337, 152 P. 445; Power & Irrigation Co. of Clearlake v. Capay Ditch Co., 226 Fed. 634; Levy v. Inman, 103 Okla. 90, 229 P. 436; Sioux City v. Trust Company, 82 Fed. 134.

This equitable requirement has been applied to an infant who fraudulently represented that he was over the age of 21 years and therefore competent to contract. International Land Co. v. Marshal', 22 Okla. 693, 98 P. 951; see, also, Myers v. Hurley Motor Co., 47 S. Ct. Rep. 277, 273 U. S. 18. Defendant also cites as authority for this proposition, section 9668, O. S. 1931, which reads as follows:

"9668—Person receiving benefits estopped to deny validity of conveyance—Exception as to fraud and incompetents. Any person or corporation, having knowingly received and accepted the benefits, or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

We are of the opinion that this section of the statute has no application to the case at bar. It could not be said that this incompetent, who has been for several years confined to an insane asylum, could "knowingly" receive or accept the benefits of the drainage ditch. The defendants are charged with notice of the limited authority of the county court and the guardian under the statute, and an incompetent confined in an insane asylum cannot be estopped from asserting his rights by an unlawful act of the county court or the guardian.

While the authorities are not in harmony as to the application of this rule, we do not feel that it shou'd be extended to apply to an incompetent confined in an insane asylum. The Supreme Court of Indiana, in Barkley v. Barkley, 106 N. E. 609, held:

"The rule that a deed, voidable because entered into by a person of unsound mind, carries title and must be disaffirmed by the grantor or his heirs, accompanied with an offer to restore the consideration, does not apply where the mental incompetency is known to the grantee."

In the body of this opinion, the court says:

"It is settled that where the mental incompetency of the one who has made the conveyance or other contract is known to the other at the time it was made, no allegation of a tender or offer to restore the consideration is a necessary averment of the complaint. Thrash v. Starbuck (1896) 145 Ind. 673, 44 N. E. 543; Studabaker v. Faylor (1908) 170 Ind. 498, 83 N. E. 747, 127 Am. St. Rep. 397; 1 Elliott on Contracts, sec. 386."

The defendants knew at all times that the plaintiff had been adjudged an incompetent by the county court of Grady county; that a guardian was in charge of his estate, and they were charged with notice of the limitations upon the authority of the county court and guardian to bind or incumber his estate. The maxim that he who seeks equity must do equity will not be applied where to do so will defeat a public policy of the state. To apply this rule as urged by defendant wou'd destroy the effectiveness of and protection afforded incompetents by section 1267, O. S. 1931.

In view of the foregoing, we hold that a special assessment is a tax within the contemplation of the Atoka Agreement; that the lands in question are nontaxable; that the levy for said special assessment tax was void and of no force or effect. We further hold that there was no lien which might have been foreclosed upon the real estate of this incompetent, for which the county court had power to authorize a mortgage, and that the order of the county court was beyond the power and authority of the county court, and therefore void; likewise, the guardian was without authority or power to execute a valid mortgage upon the allotment of the incompetent. We further ho'd that the petition of the plaintiff stated a cause of action against the defendants, and that the equitable maxim "he who seeks equity must do equity" has no application to the facts in this case. We conclude under the facts disclosed by the record that judgment should have been entered in favor of the plaintiff.

The judgment of the trial court is there-

fore reversed, with instructions to enter judgment for the plaintiff canceling the notes and mortgage and quieting title to said real estate.

The Supreme Court acknowledges the aid of Attorneys Louie G. Kneeland, Paul Lindsay, and Jerome Hemry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Kneeland and approved by Mr. Lindsay and Mr. Hemry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.