[No. 2953.  Dec. 3, 1926.]

STATE TRUST & SAVINGS BANK
v. OTERO et al.

[252 Pac. 167]

SYLLABUS BY THE COURT

Sureties upon a guardian's bond are discharged where a settlement between guardian and ward has been allowed to stand unchallenged for two years and ten months, during which time the sureties, knowing of the settlement and release and relying upon the same, have assumed new relations, incurred new liabilities and obligations, and have lost opportunity to obtain indemnity from the guardian.

Appeal from District Court, Sandoval County, Hickey, Judge

[1] 28CJ p. 1302 n. 66; p. 1303 n. 69, 70; 32Cyc p. 174 n. 39.

Suit by the State Trust & Savings Bank, administrator with will annexed of the estate of Grover W. Harrison ,deceased, against Fred Otero and others. Judgment for plaintiff, and the defendants appeal. Reversed and remanded, with directions.

M. J. Helmick and George C. Taylor, both of Albuquerque, for Appellants.

Marron & Wood, of Albuquerque, for appellee.

OPINION OF THE COURT

PARKER, C. J. This is a suit brought by the plaintiff (appellee) against the defendants (appellants) to fasten a lien upon their property. The lien was claimed by reason of a judgment obtained by plaintiff's testator in a suit against his guardian. The three Oteros (defendants) acquired the property from their father and mother by inheritance and devise, and their father was during his lifetime surety on the guardian's bond. The district court entered a decree establishing the lien and ordering sale of the property, from which decree this appeal has ben perfected

The facts in the case are that on May 5, 1890, one Mariano S. Otero executed a bond as surety. The bond was a guardian's bond of one George W. Harrison, his infant son. After the ward became of age, he executed a release to his guardian of all claims against him, said release being executed on or about March 31, 1908. Said release was induced by fraudulent representation and concealment on the part of the guardian. Shortly thereafter the ward became dissatisfied with the settlement he had received from his guardian at the time of reaching his majority, and employed counsel, who made an investigation of the affairs of the guardian and ward. As a result of that investigation, the guardian made further payment of $10,000 in cash and conveyed to the ward certain real estate in St. Louis, Mo., in full settlement of the matter, and the ward exe-

cuted a full release to the guardian on June 1, 1908, which release was promptly filed and entered of record in the probate court of Bernalillo county, where the guardianship was pending.

At the time this settlement was made, the ward and his counsel knew that the settlement was not full and fair, and was not based upon a full disclosure by the guardian. Just how great the disparity was between the amount due him and the amount he was receiving, and the various kinds of property to which he was entitled, neither he nor his counsel knew. But his counsel knew that no disclosure was made by the guardian, and was satisfied that he owed the ward many thousands of dollars more than was being paid. Such knowledge of counsel is clearly to be imputed to the ward in the absence of some showing that the ward was deceived by his counsel, which is not even hinted in the case. They made the settlement, however, rather than charge the father with the frauds which they knew had been practiced upon the ward. This settlement stood unchallenged from June 1, 1908, when it was executed, until March 31, 1911, when the ward brought suit in the district court of Bernalillo county against his guardian for an accounting of the property coming into his hands, and of his doings as such guardian, and to compel the guardian to pay over the amount found to be due. The guardian appeared and defended, and the case resulted on May 23, 1919, in a judgment against the guardian in a sum of more than $110,000. This suit resulted, in the first instance, in a judgment for the guardian, but upon appeal to this court (Harrison v. Harrison, 21 N. M. 372, 155 P. 356, L. R. A. 1916E, 854) the judgment was reversed. There was no discussion in that case as to the effect of the settlement and discharge of June 1, 1908, upon the liability of the sureties on the guardian's bond, the inquiry being confined to the question whether, as between the guardian and ward, the release might be set aside and a full accounting be had between them,

and it was held that it might  Upon a retrial, the judgment for $110,000 resulted.

Mariano S. Otero, the surety, died February 1, 1904, leaving a will, devising his property, one-half to his wife absolutely, and one-half to her as trustee for their five children, including the defendants Oteros and their two sisters.  The widow died intestate May 22, 1909.  On December 29, 1909, the heirs made a contract among themselves whereby a partition was effected of the real and personal property of the estates of both father and mother.  Deeds were exchanged between them effectuating the partition, and the property upon which the lien has been fastened by the decree came to the three defendants Oteros.  On February 25, 1910, the three Oteros conveyed all of the property received by them under the partition to Otero Bros Company, the other defendant, which is a corporation organized by the Oteros for the purpose of taking over and holding the said property.  At the time of the partition the Otero brothers assumed the payment of all of the debts of the estate of Mariano S. Otero, deceased, and the corporation, at the time of the conveyance to it of the said property, assumed the payment of all of said debts, amounting to about $50,000.  Other persons became stockholders of the  corporation.  The Otero brothers knew of the settlement of June 1, 1908, between the guardian and ward, and one of them assisted counsel for the ward by urging the guardian to make a satisfactory settlement with the ward.  He was present at a conference between counsel for the ward and the guardian and knew no disclosure was made by the guardian to the ward's counsel as a basis for the settlement.  He communicated his knowledge to the other Oteros.  The Oteros, however, relied upon the release as discharging their ancestor's estate from liability on the bond.  They assumed a new relation to the other heirs, and assumed the payment of the debts of the estate upon the strength of the release.

This suit was commenced January 24, 1920, and the amended complaint, upon which the case was tried,

was filed May 28, 1921. It thus appears that this suit was instituted some 12 or 13 years after the settlement between the guardian and ward had stood unchallenged for 2 years and 10 months of that period, during which times all of the changes, in the situation of the parties above recorded had occured. The defendants were not parties to any of the proceedings between the guardian and ward and had no notice of the same, so far as appears.

Defendants presented findings of fact covering the case as above outlined, which were refused, although they were supported by the undisputed evidence. They also presented conclusions of law to the effect that the ward's release discharged the sureties, and that the plaintiff was barred by laches in allowing the release to stand for 2 years and 10 months, which were refused. The court found that the ward disaffirmed the release within a reasonable time, but gave no consideration apparently, to the changed conditions of the defendants while they relied upon the release. In making this finding the court disregarded the only evidence in the case on the subject, which was that the ward at the time of making the settlement knew that he was being cheated by his guardian and knew that much more was due him than he was receiving in the settlement.

We have then a case where a settlement and release is had between a guardian and ward, not based upon a full and fair disclosure by the guardian; where the ward has knowledge at the time of the release and settlement that the guardian has made no full and fair disclosure as to the ward's property coming into his hands; where the ward allows the release and settlement to stand unchallenged for 2 years and 10 months without notice of any kind of an intention to repudiate the same; where during such period of acquiescence the heirs of the deceased surety on the guardian's bond relied upon said settlement and release, and made partition of their ancestor's estate with their fellow heirs, and assume the payment of all of the debts of the

estate; where said heirs, at the time of said settlement and release, had the same knowledge that the ward had concerning the lack of information from the guardian as to the true status of the ward's estate. The question is, then, whether under such circumstances, there can be any recovery against the heirs.

1. It may be said generally that where the surety upon a trustee's bond has not been misled by a settlement between the trustee and his cestui que trust, and where he has not lost opportunity to indemnify himself as against the trustee by reason of reliance upon the settlement or delay in attacking the same, and where he has not assumed new relations and obligations in reliance upon the settlement, there would seem to be no justice in saying that his liability had been terminated by reason, merely, of the fact that the settlement had been made. So long as the surety has not been injured, he cannot complain if his liability is held to remain in force until full settlement has been effected. But as in this case, where all, or most, of the conditions above mentioned are present, equity and good conscience would seem to require that the surety be held to be discharged. Upon this general subject, see 12 R. C. L., Guardian and Ward § 57; 28 C. J., Guardian and Ward, § 511.

In Aaron v Mendel, 78 Ky. 247, 39 Am. Rep| 248, the facts were similar to those in the case at bar. The release was unfairly procured, and the sureties were not shown to have any complicity in procuring the release knowing it to be fraudulent. The plaintiff was aware at the time she executed the release that it was unjust and ought not to bind her. She and her husband took legal advice on the subject, and were fully advised of their rights in the premises; yet they stood by apparently acquiescing in what she had done for four years after the release was executed, and for three years after her husband had attained his majority and after they were fully advised of their rights, and without any step to obtain relief, and without notice to the surety that they would not abide by what had been

done. The surety during the greater part of this time was aware that the release had been executed. The court said:

"The relation between a creditor and one known to him to be bound only as surety for another is one of trust and confidence, and demands the utmost good faith on the part of the creditor. Story's Equity, § 324; Burks v. Wonterline, 6 Bush, 20; Mount v. Tappey, 7 Bush, 617.

"Was the conduct of Aaron and wife such as good faith toward the surety demanded? As long as they failed to repudiate the settlement and release, the hands of the surety were tied. Their silence was equivalent to a declaration that they were satisfied, and the surety knowing that the release had been executed, was lulled into supposed security. He neither knew the necessity for seeking indemnity nor had the legal right to demand it. He had no right to pay the debt, and assume himself the position of a creditor. Until they should elect to avoid the settlement and release there was no debt to pay, and this they might never do; and, having kept him so long in a position in which he was authorized by their conduct to believe he was finally discharged, and in which he was deprived by them of all right to seek indemnity, they were guilty of such bad faith toward him as ought, in equity and good conscience, to prevent them from now recovering."

The court cites and quotes from Kirby v. Taylor, 6 Johns. Ch. (N. Y.) 248. In that case there was no fraud upon the part of the guardian. But the court held that acquiescence in the release for a period of 20 months was "a complete exoneration of the surety. He had a perfect right to regard the discharge as valid, and it deprived him in the meantime of the opportunity to obtain indemnity."

The Kentucky court goes on further:

"That there was fraud in this case and none in that can have no other effect than this: As long as the fraud was concealed the ward could take no step to avoid the release on that ground, and, consequently, nonaction on his part would do no wrong to the surety; but when the fraud becomes fully known, and the ward is fully advised as to his rights, the fraud can no longer present an obstacle to his proceeding to avoid the release, and the consequences should be precisely the same as if the release had been procured without fraud."

In Douglass v. Ferris, 138 N. Y. 192, 33 N. E. 1041,

34 Am. St. Rep. 435, the sureties on a guardian's bond were held not to be discharged by reason of a fraudulent settlement. This case is much relied upon by the appellee in support of the judgment. The case is not applicable to the facts in the case at bar. In that case the sureties did not know of the existence of the discharge, and consequently could not and did not act upon the faith of it, and were not misled or lulled into security by it.

In Greenup v. U. S. Fidelity & Guaranty Co., 159 Ky. 647, 167 S. W. 910, the plaintiff released her guardian, who was her husband, under circumstances showing duress, but did not bring suit upon the guardian's bond until 29 months after the settlement, and 20 months after she was divorced from her husband. The surety was held to be discharged. The court followed the case of Aaron v. Mendel, above cited, and quoted at length from the same.

In People v. Borders, 31 Ill. App. 426, the ward upon reaching majority gave a receipt in full to the guardian, but the guardian was never discharged. She brought suit after a lapse of six or seven years. The sureties did not know of the giving of the receipt, and as a matter of fact the money was not paid over. The sureties were held liable. The court said:

"An estoppel in respect of the element here involved, is where one, by acts or declarations, represents a certain state of facts to exist and thereby brings about a change of conduct in another, he cannot afterward be heard to assert a contrary state of facts if injury would result to the party who had acted, relying upon the truth of the representations. The guardian was not discharged. It does not appear that the sureties were lulled into inaction by the singing of this receipt. It is pertinent to inquire, what were these sureties led to do, or not to do, by the fact that this ward had signed a receipt to her guardian for the amount found due her? Nothing, so far as this record shows."

See also, Baum v. Hartmann, 226 Ill. 160, 80 N. E. 711, 117 Am. St. Rep. 246.

This case well illustrates the doctrine involved. If the sureties are in no way injured they cannot com-

plain of mere delay on the part of the ward in asserting his rights. But where, as in the case at bar, the sureties knew of the giving of the release, relied upon it, assumed new relations to their coheirs and assumed new obligations, it sufficiently appears that in equity and good conscience they cannot be held in this action. This case differs somewhat from any which have been cited, in this: Here both the ward and the heirs of the deceased bondsman knew the same facts, viz., that the guardian had made no full and fair disclosure of the amount of the ward's estate; they knew that probably the settlement was not full and fair, and consequently was subject as a matter of law to repudiation by the ward. But we cannot see how this can change the result. It was the duty of the ward towards the heirs to let them know, either by suit or notice, that he would not abide by the settlement. He made no move for 2 years and 10 months, during which time the heirs did simply what they had a right to do. They made the partition of the estate, assumed its debts, and conveyed their portion to the corporation. If they did not have the right to do this, then they would be compelled to await indefinitely upon the whim and caprice of the ward to ascertain his intention as to abiding by the settlement, or otherwise. This is a clear case of estoppel and prevents recovery.

Counsel for appellee does not discuss directly this proposition. He devotes much of his brief to the proposition that the question of the existence of laches rests in the discretion of the trial court, and the chancellor's decision will not be disturbed on appeal except for abuse of discretion. We do not deem this proposition of any avail in this case. The undisputed evidence shows that the ward, even before he executed the release, knew that he was being cheated and was not receiving a just settlement from his guardian, and that no disclosure of facts had been made by the guardian. In the face of that knowledge he executed the release and allowed it to stand unquestioned for 2 years and 10 months. In the meantime he gave no

notice of any kind to the defendants of his dissatisfaction with the settlement, or of his intentions to question the same. They proceeded in their business, relying upon the valdity of the settlement, and assumed large obligations personally and by and through their corporation, the other defendant, running into many thousands of dollars. They cannot now be restored to their former position, and they have lost opportunity to seek indemnity from the guardian. In such a case there is no room for discretion on the part of the trial judge. It was inexcusable laches on the part of the ward and bars recovery.

Counsel devotes a portion of his briefs to showing that the corporation defendant is not a bona fide purchaser for value. This may be admitted, but the Otero brothers were purchasers for value; they having assumed personally the payment of about $50,000 worth of debts of the estate of their father, relying upon the settlement.

Counsel for appellant presents some other propositions, which we do not deem it necessary to consider in view of our conclusion upon the more important consideration involved.

It follows from all of the foregoing that the judgment of the court below is erroneous and should be reversed and the cause remanded, with directions to set aside the judgment, and to dismiss the complaint, and it is so ordered.

BICKLEY and WATSON, JJ., concur.