## GLOVER et al. v. WARNER.

No. 18934. Opinion Filed Feb. 19, 1929.

John J. Davis, for plaintiffs in error.

Kirby & Markley, for defendant in error.

HALL, C. The pivotal facts in this case are as follows:

Johnnie Glover, one of the plaintiffs in error, was a minor and the owner of a parcel of land situated in this state. His guardian, Lula Glover, had permitted taxes on the land to become delinquent for one or more years. Lula Glover, the guardian, filed in the county court her petition for an order to mortgage this land to pay these delinquent taxes and to pay an attorney's fee and court cost incident to the court proceedings leading up to the mortgage. Proceedings were had in the court or before the county judge, who authorized a mortgage to be executed on the land, and the mortgage was executed in the sum of $500. It was a proceeding to foreclose this mortgage which brings the action to this court.

The court proceedings in the county court clearly and definitely show that the mortgage was executed for the primary purpose of paying the delinquent taxes existing against the land, and such was the only purpose, except the sum of $18.70 as court costs and the attorney's fee, which was only an incident thereto. The vital part of the petition to mortgage the land is as follows:

"That the following debts and liens are now existing and charged against the estate of said minor, to wit: There is now due and owing to the court clerk of Wagoner county, Okla., in the above-styled and numbered probate action, the sum of $18.70 as court costs accrued, due and unpaid herein; that there is also charged and assessed against the above-described lands owned by said minor ad valorem taxes due and delinquent in the sum of $386.26; that the said land has been sold and tax sale certificate issued," etc. (Statements as to what will happen if delinquent taxes are not paid—by a mortgage on the land.)

In fact, it is conceded that the land was mortgaged to pay these accumulated delinquent taxes referred to in the briefs of counsel as "tax liens."

The guardian, the minor, and other persons interested in the land set up these facts in their respective answers to the petition for foreclosure of the mortgage. Proof of these allegations in the answers was introduced into the record. The proceedings in the county court pertaining to mortgaging the land were introduced in evidence. The court rendered judgment for plaintiff, giving plaintiff a money judgment against the defendant, Johnnie Glover, the owner of the land, and a decree foreclosing the premises.

There are but two essential questions involved in this case: (1) Does the statute clothe the county court or county judge with authority to authorize a mortgage on a minor's land solely for the purpose of paying delinquent taxes and expenses incident to the court proceedings to the establishment of the mortgage? (2) Where the proceedings disclose on their face that such mortgage was executed solely to pay accumulated taxes, court costs, and as an incident thereto an attorney's fee for prosecuting the proceedings, is the order or proceedings of the county court subject to collateral attack?

Regarding the first question, our statutes, section 1260, Comp. Stat. 1921, provides as follows:

"The county judge may, upon verified petition supported by sufficient evidence showing that the best interest of the owners of the real estate affected requires it, by an order, grant authority to the administrators or executors of the estate of deceased persons or to the guardians of the estates of minors, incompetents or insane persons, to enter into contracts for and to renew or extend the time of payment of any mortgage or lien upon the real estate of such estate or ward, or to execute a new mortgage for the purpose of paying off and securing the release of any such mortgage or lien, provided that in no case shall such authority be granted to mortgage, or contract for the renewal or extension of any mortgage for an amount greater than may be necessary to pay liens existing at the time such order is granted including principal, interest, taxes and such reasonable expense as may be incident to perfecting such renewal or new mortgage."

The title to the act (chapter 11, Sess. L. 1915) reads as follows:

"An act amending section 1, of chapter 66, of the Laws of 1913, relating to procedure in renewing or extending real estate mortgages by administrators, executors and guardians in certain cases and declaring an emergency."

We think it was the clear intent of the Legislature not to authorize a mortgage on land belonging to a minor for the primary purpose of paying delinquent taxes. Under our law (section 9724, Comp. Stat. 1921), taxes on real estate are a perpetual lien thereon from the time they are levied, and if the statute permitted the mortgaging of a minor's land for the primary purpose of pay-

ing taxes, all lands in the state owned by minors would be subject to a mortgage, because the tax itself on the land constitutes a lien—a lien by operation of law. In such instance, the protective nature of the statute would be entirely lost. The Legislature did not mean this class of liens, that is, involuntary liens, but, instead, they meant contractual liens. If the Legislature had intended any other construction of the law, they would have expressly said so, as they did in providing that in the execution of mortgages as renewals or extensions an additional amount might be included for "taxes" and cost incident to perfecting the renewal of the mortgage. If the Legislature intended that the general word "lien," as used in the act, included tax liens, the provisions for including taxes as a supplement to renewal or extension mortgages would be surplusage and without meaning.

We appreciate the fact that the word "lien," when used alone, from the viewpoint of etymology, is broad and comprehensive enough to include tax liens and all liens: but in construing the statute, the word must be considered in connection with all the other provisions and the general context of the statute. We are not at liberty to carve out of the statute a single word and give it an unrestricted meaning different from the clear intent of the Legislature, as derived from the general context and from the purport of the language employed.

In this state, tax liens automatically follow the assessment or levy of taxes on real property, and such liens are rarely, if ever, designated as simply "liens"; but instead are referred to and entitled "tax liens" when they are the subject-matter of consideration.

Our statute, section 9747, Comp. Stat. 1921, provides that, where the lands of a minor have been sold for nonpayment of taxes, he has a period of one year after his majority in which to redeem this land, and that the interest rate is only 10 per cent. instead of 18 per cent., charged against the lands of adults.

In the light of the statute, it would be a gross absurdity to attribute to the Legislature the intention of doing something which would destroy the thing it was endeavoring to create. This end would be accomplished and this statute of limitation (section 9747, Id.) surrounding and protecting the property of minors would be entirely broken down if taxes alone could be converted into a mortgage indebtedness, representing the taxes, including costs of court proceedings,

attorneys' fees, with the provision that this mortgage indebtedness might mature at any time after date. That is not the entire evil surrounding such a transaction. Mortgages usually provide for an attorney's fee in case of foreclosure, and court costs follow as a matter of law, and this excess baggage, under such construction, would be loaded on the minors. A good example of the pernicious results is this case. The delinquent tax for which the mortgage in this case was substituted was bearing only 10 per cent. interest (and the minor was given one year after his majority to pay these taxes and automatically redeem his land if sold). This tax was converted into a note and mortgage bearing the rate of 10 per cent. interest on the principal amount of taxes, plus the court costs, attorneys' fees and the price of making an abstract of title, with a provision in the note and mortgage for 10 per cent. of the face thereof, plus the sum of $15 for attorney's fees in case of suit thereon.

Testimony in the case showed that the minor owed the sum of $259.40 as taxes, including the taxes on a separate 40-acre tract in which he was the owner of only an undivided one-half interest. The following expenses were incurred in establishing the mortgage and in obtaining the judgment in foreclosure: Attorneys' fees $115; court costs involving two court proceedings; abstract furnished mortgagee, approximately $50; and the cost of a legal notice by publication in a newspaper. These extraordinary creations in excess of the original tax, with accumulated interest on the additional charges alone, approximately equaled the tax on the land for which the mortgage was originally executed.

The Legislature never intended that statute to be interpreted in such a manner that a minor's estate could be so badly treated within the guise of the law. In this connection, it is well to observe that the charges and costs incident to the sale of the land for nonpayment of taxes and the acquisition of a tax deed are negligible. For example, the statutory rate or fee for advertising the land for sale is about 25 cents; there are one or two other small or trivial charges. In any event, these charges are inconsiderable when compared to the costs and expenses incident to the establishment of a mortgage on a minor's land and the expenses incident to what may follow, as was fully revealed in the present case.

Reverting to the particular matter discussed in a former paragraph, it will be observed that the statute provides that "guard-

ians of the estate of minors are authorized to enter into contracts for and **renew and extend the time of payment of any mortgage or lien** upon the real estate of such ward." The Legislature was not speaking of tax liens, for a tax lien cannot be renewed. Neither can the "time of payment" of tax liens be extended. It is self-evident that the Legislature was speaking of liens not existing by operation of law, but were speaking of liens in the class of mortgages, where the holder has some authority to extend same within the statutory period.

The language of the statute is that a mortgagee may be authorized to renew or extend mortgages or liens. The proviso recites that the mortgage shall not be made for an amount in excess of what may be necessary to pay existing **liens** (including principal, interest, expenses and "taxes"). It will be seen that the word **"lien"** in this statute is used synonymously with the word **"mortgage."** That fact, and the additional fact of the express provision authorizing the inclusion of **taxes** as a secondary basis for mortgage, clearly show that the word **"lien"** as therein used is restricted to such liens as are in the same class as mortgages. In other words, to some extent, the rule ejusdem generis applies here.

In connection with the second question, this court has not only spoken many times on the particular subject-matter which by analogy is decisive of the question before us, but in addition thereto it has considered and adjudicated cases involving this particular statute.

Perhaps few questions have arisen which have produced more difficulties for the bench and bar than the question of collateral attack of judgments. The courts and profession generally have not always understood the principle upon which collateral attack is either permitted or denied. Much of the confusion still exists. This is evidenced by the earnestness with which attorneys still insist in their briefs and argument before the courts, which is sometimes favorably received, the erroneous proposition: (1) That if the court has jurisdiction of a person, and (2) jurisdiction of the subject-matter, then any act performed by the court thereafter constitutes a mere irregularity. Of course, if we could consider and restrict the term "subject-matter" as meaning the **particular thing** or object upon which the belief is based, the above rule would not necessarily be objectionable. However, the true and unmistakable rule has been declared by our court in a number of well-considered decisions, and by the courts of many of the other states, and also by the federal Supreme Court.

The parent case from this state containing one of the most exhaustive opinions on the subject, in which opinion much of the mist was cleared up and the confusion eliminated, is the case of Roth v. Union Nat. Bank, 58 Okla. 604, 160 Pac. 505. In that case, the late lamented Justice Thacker, speaking for the court, held, and so declared, that in addition to the jurisdiction of the person, and of the subject-matter, **there must exist judicial power given the court to render the particular judgment which it assumes to render.** In this case, the court quoted with approval the following paragraph from the syllabus in a case from the United States Circuit Court of Appeals, Farmers' & Merchants' Bank of Phoenix v. Arizona Mut. Sav. & Loan Association (220 F. 1) as follows:

"Although a court has jurisdiction of the subject-matter of an action or of the parties, its power to render a valid judgment is, nevertheless, limited by the nature of the suit and the issues made by the pleadings, and if it transcends such limits, its judgment is without jurisdiction and void."

The rule announced in Roth v. Union Nat. Bank et al., supra, was literally followed in the case of Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981, in which case, in the syllabus, it was said:

"Where the record in the case affirmatively discloses that the court was without power to make the order or decree it assumed to make, such order is void, subject to collateral attack for want of jurisdiction in the court to make the same. A judgment is void when it affirmatively appears from the inspection of the judgment roll that any one of three following juridictional elements are absent: First, jurisdiction over the person; second, jurisdiction of the subject-matter; and, third, judicial power to render the particular judgment."

To the same effect is the case of Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 Pac. 498; the recent case of McPhaul v. Franklin, 121 Okla. 162, 249 Pac. 293; Yawitz v. Hopkins, 70 Okla. 158, 174 Pac. 257; and Jackson v. Carroll, 86 Okla. 230, 207 Pac. 735. In the latter case, this particular matter was again fully considered. Numerous amicus curiae briefs were filed in the case. On rehearing, the court, in commenting on the argument in support of the erroneous contention relating to collateral attack, said:

"There are two propositions that the amici curiae repeat in tiresome regularity, and one is that the county court of Carter county having jurisdiction of the guard-

ian and of the subject-matter, any proceeding by the court thereafter could not be void; and the other is that the defect, if any, was a mere irregularity."

The opinion in that case quotes with approval the Roth Case, and contains the following excerpt from the case of Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914:

"Though the court may possess jurisdiction of a cause, and of the subject-matter and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law."

That rule has become the settled law of all the states. 15 Ruling Case Law, pp. 853-854; 34 Corpus Juris, 531.

In Yawitz v. Hopkins, supra, the rule was expressed in the following language:

"Under section 6364, Rev. Laws 1910, the county judge is without jurisdiction to make an order authorizing the guardian to execute a mortgage or other instrument creating a lien upon the property of his ward, except as security for the then existing debts and liabilities for which such estate or any part thereof is then legally liable to be ordered sold."

"A void judgment or order of the trial court may be collaterally attacked."

The Roth Case, supra, involved the collateral attack of a judgment or order of the county court authorizing a mortgage for $1,800 on lands belonging to a minor. The proceedings disclosed an indebtedness of only $1,312.98. The judgment in excess of the latter sum was held to be absolutely void and subject to collateral attack.

The case of Yawitz v. Hopkins, supra, involved a collateral attack of a judgment of a county court authorizing the execution of a mortgage on the lands of a minor. This case arose under the old law and before the amendment, but the principle relative to collateral attack is the same.

In the case of McPhaul v. Franklin, supra, a county court entered a judgment authorizing a guardian to mortgage his minor ward's land for the purpose of obtaining money to "school the minor." This court held that the court transcended its power, and therefore the order of judgment was subject to collateral attack.

Having decided that the statutes do not empower the county court, or any other court, with authority to authorize a mortgage to be executed on a minor ward's land for the primary purpose of paying taxes thereon or tax liens, therefore, any judgment assuming to authorize such for that particular thing is void, and is subject to collateral attack.

The judgment of the court in this cause is hereby reversed, with directions to enter judgment for plaintiffs in error, defendants in the trial court.

TEEHEE, HERR, JEFFREY and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 15 R. C. L. p. 853; 5 R. C. L. Supp. p. 855; 6 R. C. L. Supp. p. 935. See "Guardian and Ward," 28 C. J. §358, p. 1206, n. 1. "Judgments," 34 C. J. §834, p. 531, n. 20.