**SOONER FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, Plaintiff,**

**v.**

**Bill W. SMOOT and Dowana L. Smoot, husband and wife, Defendants,**

**and**

**Peoples Savings & Investments, Inc., Appellee,**

**and**

**Harvey Lee, Guardian for Charles E. Harding, Appellant.**

No. 75937.

Supreme Court of Oklahoma.

April 4, 1995.

---

Robert W. Raftery, Larry Glenn Ball, Erin M. Van Laanen, Spradling, Alpern, Friot, Gum & Scoggins, Oklahoma City, for appellee.

Monty L. Bratcher, Monty L. Bratcher, P.C., Edmond, for appellant.

LAVENDER, Justice.

We decide whether the trial court erred when she refused to set aside a sheriff's sale and vacate as void an agreed judgment in a foreclosure action which, in part, validated a mortgage as a lien upon the real property of an adjudicated incompetent. We hold the trial court erred because on its face the agreed judgment is void because it was beyond the authority or power of the court to enter as spelled out in 58 O.S.1991, § 385, which strictly limits the authority of guardians and trial courts in placing mortgages upon the real property of adjudicated incompetents.[1] We also decide that neither laches or estoppel bars a collateral attack on the involved agreed judgment.

## PART I. FACTS AND PROCEDURAL HISTORY.

Charles E. Harding (Harding, incompetent or ward) wanted to borrow some money. After rejection by other financial institutions, Harding applied to First Mortgage Company. His application was turned down, but Bill Smoot, an employee of First Mortgage, offered to buy Harding's residence. Harding signed a warranty deed to his property in favor of Smoot and his wife, Dowana. In return for the warranty deed Smoot paid off Harding's $10,000 home mortgage, allegedly deeded Harding mineral rights in undeveloped real estate, and gave Harding $20,000. *Sooner Federal Savings & Loan Association v. Smoot*, 735 P.2d 555, 556 (Okla.1987). The

residence was located in Nichols Hills, Oklahoma and was appraised at $235,000. *Id.* Harding was allowed to remain in his home and pay monthly rent to Smoot according to a lease agreement Smoot prepared. *Id.* at 557.

After obtaining the warranty deed the Smoots borrowed money from two financial institutions, securing the debts with two mortgages on the property—one to Sooner Federal Savings & Loan Association (first mortgage) and the other to appellee, Peoples Savings & Investments, Inc. (second mortgage).[2] The Smoots defaulted and Sooner brought a foreclosure action. Harding was joined in the action, as well as Peoples. At some time after the transaction with Smoot, appellant Harvey Lee, was appointed guardian for Harding due to his incompetency and Lee acted as guardian for Harding in the instant litigation.

The main issue in the foreclosure action became whether or not Harding was competent when he deeded the property to the Smoots and, therefore, understood that he was actually deeding away the property. Essentially, if Harding was incompetent the deed would be nullified and the mortgages would be invalid. A trial was set on this issue.

On the day set for trial Lee, as guardian, entered into a settlement agreement with Peoples which, among other things, **recognized the validity of the second mortgage** in the amount of $58,000.00 regardless of the outcome of the trial between Harding and Sooner. The settlement also agreed Peoples was entitled to judgment on its note and mortgage in the amount of $58,000.00 and that it was entitled to foreclose the mortgage and sell the property. The settlement also provided Peoples would not participate in the trial, that the trial judge would be informed Harding and Peoples had settled and that issues concerning the validity and extent of People's second mortgage would no longer be

---

1. 58 O.S.1991, § 385, is identical to 58 O.S.1981, § 385, the statute in effect at all pertinent times involved in this action. In view of our determination the dictates of § 385 renders the agreed judgment void, we need only consider the arguments of the parties as they relate to the applicability or non-applicability of that provision. We

need not and, therefore, do not, consider any other arguments presented by the parties.

2. The Smoots borrowed $85,000.00 from Sooner and $52,587.90 from appellee.

an issue for the trial court. It further provided Peoples would not execute and commence sale proceedings on the property for six months. We also note the settlement provided that the guardian agreed to undertake to sell the property within the six month period following the settlement. The settlement was approved by the judge handling the guardianship matter and it was reduced to an agreed judgment by the trial judge presiding over the foreclosure.[3]

Although ordering the property sold if the debt was not satisfied, the agreed judgment provided that Peoples could not execute on the judgment (i.e. have the property sold at Sheriff's sale) until six months after a final decision regarding the validity of the Sooner mortgage. Although not expressly so stated in the agreed judgment, this six month period was apparently an extension of the six month period contained in the settlement agreement which allowed the guardian to sell the property. Like the settlement agreement, **the agreed judgment recognized the validity of the second mortgage in the amount of $58,000.00 and also set out a finding that People's mortgage constitutes a valid lien upon the real property.**[4] The agreed judgment also provides that the personal debt of the Smoots had been discharged in bankruptcy and that the agreed judgment in favor of Peoples was *in rem* only, i.e. against the property. **As can be seen from this rendition of both the settlement and agreed judgment, both of these documents validated Peoples' mortgage as a lien upon the real property regardless of whether or not Harding was ultimately determined to be the owner of the property and in spite of the fact that all appear to agree the debt secured by the mortgage was not that of Harding, but that of the Smoots.**

The trial went forward without Peoples. The trial judge ruled in favor of Harding and held the deed to the Smoots void because of Harding's incompetency.[5] Sooner's mortgage was, thus, determined not to be a valid lien on the property. This judgment was affirmed by this court on appeal in *Sooner Federal, supra.* Peoples took no part in the appeal.

Peoples sought to execute on the agreed judgment when Lee did not sell the property within six months after our decision in *Sooner Federal.* The property was sold to Peoples at Sheriff's sale. Lee, on behalf of Harding, then mounted a collateral attack on the agreed judgment, moving to set aside the Sheriff's sale and vacate the agreed judgment arguing it was void.[6] One theory advanced by Lee was that the agreed judgment (based as it was on the approved settlement agreement) was void as beyond the judicial power of the trial court to render the particular judgment because the agreed judgment was nothing less than a validation of the mortgage and was expressly prohibited by 58 O.S.1991, § 385. In essence, Lee argued § 385 acts to bar the authority of trial courts

---

**3.** The trial judge handling the foreclosure was a different one than handled the guardianship. Also, the trial judge who ruled on the motion to vacate the agreed judgment was yet a third judge.

**4.** The $58,000 includes the loan principal, Peoples' attorney fees and court costs.

**5.** Testimony in *Sooner Federal Savings & Loan Association v. Smoot,* 735 P.2d 555 (Okla.1987), established that Harding, although over fifty (50) years old at the time of the deed transaction, had the mentality of a six to ten year old, with a reading ability of only a first grade student. His condition had been life long. He had been highly socialized so that limited contact with him would not necessarily reveal his limited capabilities. Expert and lay testimony showed Harding lacked all understanding needed to comprehend the "nature and effect of the documents which he signed in regard to the real estate transactions involving his property." *Id.* at 557.

**6.** The attack on the agreed judgment is collateral because we have held the judgment in a mortgage foreclosure action is the order determining the amount due and ordering the sale of the property to satisfy the mortgage lien. *Federal Deposit Insurance Corporation v. Tidwell,* 820 P.2d 1338, 1341 (Okla.1991). In order to preserve review of errors as to such a judgment it is necessary to file a timely appeal from that judgment. *Id.; Wood v. Sympson,* 833 P.2d 1239, 1246 (Okla.1992). Here, no timely appeal was filed by Harding as to the agreed judgment, the order that determined the amount due Peoples and which ordered the property to eventually be sold. Thus, the attack, coming as it did after the property was sold to Peoples at Sheriff's sale, is a collateral one.

from approving the placement of a mortgage on the real property of an adjudicated incompetent unless the debt sought to be secured by the mortgage is already a valid legal lien on the property or might become a valid legal lien against the property by operation of law. The trial judge denied the motion to set aside the Sheriff's sale and to vacate the agreed judgment, as well as a motion for new trial filed by Lee, and she confirmed the sale to Peoples. Lee appealed and the Court of Appeals affirmed. We previously granted certiorari.[7]

**PART II. THE GUARDIANSHIP JUDGE LACKED AUTHORITY TO APPROVE THE SETTLEMENT AND THE FORE-CLOSURE JUDGE LACKED AUTHORI-TY TO ENTER THE AGREED JUDG-MENT.**

 A judgment is void when it affirmatively appears from an inspection of the judgment roll that any one of the three jurisdictional elements are absent: 1) jurisdiction over the person; 2) jurisdiction over the subject matter; or 3) jurisdictional power to render the particular judgment. *Winona Oil Co. v. Barnes,* 83 Okla. 248, 200 P. 981, 985 (1921). A void judgment may be vacated at any time on a motion of a party or person affected thereby when the fatal defect appears on the face of the judgment roll. 12 O.S.1981, § 1038, now 12 O.S.Supp.1993, § 1038; *Matter of Delaney,* 617 P.2d 886, 889 (Okla.1980). There is no dispute here as to whether the judge handling Harding's guard-

ianship had personal or subject matter jurisdiction over the guardianship proceeding(s). She did. There is also no dispute as to whether the judge handling the foreclosure action had personal jurisdiction over the parties or subject matter jurisdiction over the foreclosure suit. He did. The question is whether these courts had the jurisdictional power to render the particular order or judgment rendered by them—in the case of the guardianship judge, the order approving the settlement; in the case of the foreclosure judge, the agreed judgment based on the settlement.

The Court of Appeals, relying principally on *Carter Oil Co. v. Fleming,* 117 Okla. 39, 245 P. 833 (1926), found that the two judges had the resulting power to render the particular order and judgment, respectively. The Court of Appeals quoted the following language from *Carter Oil* taken from the *Syllabus by the Court:*

> **In the absence of a statutory or constitutional provision to the contrary,** a guardian, by and with the approval of the county court having jurisdiction of the estate of his ward, may compromise any controversy or litigation involving the estate of such ward; and such compromise will be binding upon the ward when it is made for his best interest and in good faith; and the subject-matter of the compromised controversy or litigation cannot

7. We note that for the first time in this appeal, appellee asserts in its response to appellant's petition for certiorari that certain of the issues raised by appellant on appeal are beyond our reviewing cognizance because not raised in a motion for new trial that was filed in the trial court by appellant. Although appellee is correct that Rule 17 (Motion for New Trial) of the Rules for District Courts of Oklahoma, 12 O.S.1991, Ch. 2, App., provides that when a party files a motion for new trial, that party may not, on appeal, rely on any errors which are not fairly embraced in the specific grounds stated therein, we believe the motion for new trial filed by appellant sufficiently raised the issue we find dispositive of this appeal. Our review of the trial court record convinces us that the motion for new trial was sufficient to raise the issue that the settlement agreement and agreed judgment were void and was sufficient to raise the error on appeal concerning the applicability of § 385 to this controversy. Appellant said in pertinent

part in his motion for new trial, "[t]he [trial court] made error in law in ruling that the settlement agreement executed by [Lee] on behalf of Charles E. Harding, an incompetent, and Peoples Savings was proper and should be given validity." Appellant also asserted in the motion for new trial that the Peoples' mortgage was invalid because Peoples' mortgagor had no title to the property. Although the motion for new trial could have been more artfully drawn we believe it continued to raise the issue we find dispositive of this appeal, i.e. the applicability of § 385, which appellant initially raised before the trial court in his motion to set aside sheriff's sale and vacate agreed judgment, and which was expressly ruled on by the trial court in denying that motion. Accordingly, we may review the argument raised in the trial court and on appeal that the agreed judgment is void because it validates a mortgage in contravention of § 385 and was, therefore, beyond the power of the trial court to enter.

be relitigated by the ward. (emphasis added)

*Id.* at 833.

The Court of Appeals also quoted from an opinion of the United States Supreme Court regarding settlements by guardians on behalf of their wards which was relied on in *Carter Oil*. The case was *Thompson v. Maxwell Land Grant & Ry. Co.*, 168 U.S. 451, 18 S.Ct. 121, 42 L.Ed. 539 (1897), where the Supreme Court reasoned that if settlements made on behalf of minors were allowed to be set aside when conditions changed, such allowance would be injurious to minors because no party would settle claims with them for fear of later repudiation. Although we agree with the general rule as stated in *Carter Oil* and the policy behind it as enunciated by the United States Supreme Court in *Thompson,* as the emphasized portion of the *Syllabus by the Court* from *Carter Oil* provides, the general rule does not apply where there exists a statutory or constitutional provision to the contrary. Section 385 is a statutory provision to the contrary which takes the settlement between Lee and Peoples outside the general rule.[8]

Section 385 provides in pertinent part as follows:

The district court or judge thereof may, upon verified petition supported by sufficient evidence showing that the best interest of the owners of the real estate affected requires it, by an order, grant authority to the ... guardians of the estates of ... incompetents ..., to enter into contracts for and to renew or extend the time of payment of any mortgage or lien or an obligation which may by operation of law become a lien upon the real estate of such ... ward, including homestead, or to execute a new mortgage for the purpose of paying off and securing the release of any such mortgage or lien, or an obligation which may by operation of law become a lien; **provided that in no case shall such authority be granted, to mortgage, or contract for the renewal or extension of any mortgage for an amount greater than may be necessary to pay an obligation which may by operation of law become a lien, or liens existing at the time such order is granted** including principal, interest, taxes and such reasonable expenses as may be incident to perfecting such renewal, extension or new mortgage. (emphasis added)

■ We have on numerous occasions construed the predecessor statutes to § 385 in regard to the authority of guardians to mortgage and courts to approve a mortgage on the real estate of wards. Although the statute has been amended over the years in regard to the emphasized proviso highlighted above as to when a court shall have **no authority** to place a mortgage (or renew or extend a mortgage) on such real property, one constant has remained in our interpretation of § 385, to wit: **if it is facially shown that the court approves a mortgage that is outside the authority or power of the court as specified in § 385 the order approving the mortgage is void.** In our view this constant is applicable to render the agreed judgment under attack void.

In one of the earliest cases we held that an order of the court purporting to authorize a guardian to mortgage the lands of his ward to secure debts that are not a lien against the estate, or for the payment of which the estate is not bound, is in excess of the power of the court—is void—and that a mortgage executed in pursuance of such an order of the court is a nullity. *Lee v. Tonsor,* 62 Okla. 14, 161 P. 804, *Fourth Syllabus* (1916). *Tonsor* concerned a situation where a guardian contracted for improvements to a dwelling house and other improvements to land owned in part by

---

**8.** *Carter Oil* is basically consistent with our current statutory law which makes it clear a guardian may, with the approval of the court exercising jurisdiction of the suit or proceeding, compromise and settle any claim made by, on behalf of or against his ward in such suit or proceeding. 30 O.S.1991, § 4–702. The question confronting us, however, is whether a guardian, with approval of the judge handling the guardianship or the particular suit at issue, may settle pending litigation when the contents of the settlement would otherwise be positively prohibited by another statute. As we set out in the text, it is our opinion the guardian may not so settle a lawsuit even with court approval.

two minor wards.[9] In that the guardian had been granted no authority by the court to initially contract on behalf of the wards for the improvements, this Court held that a mortgage placed on the real property with approval of the court was void because no valid lien had ever been created against the wards' interest in the land and that the wards were not bound for any part of the indebtedness. *Id.*, 161 P. at 806–807. In another early case we held that where part of the judgment roll facially showed that the total indebtedness of the ward's estate was for a specified amount, an order authorizing a mortgage for a greater amount was void as to the excess and subject to collateral attack. *Roth v. Union National Bank*, 58 Okla. 604, 160 P. 505, 511–512 (1916); *See also Yawitz v. Hopkins*, 70 Okla. 158, 174 P. 257, *Second Syllabus* (1918) (county judge without jurisdiction to make an order authorizing guardian to execute a mortgage or other instrument creating a lien upon the property of his ward, except as security for the then existing debts and liabilities for which such estate or any part thereof is then legally liable to be ordered sold).

In another case, we held that the court was without authority to authorize the guardian to mortgage the property of the ward for the primary purpose of paying delinquent taxes and where the record in the case affirmatively disclosed the authorization order of the court was for such purpose, the order was void and subject to collateral attack. *Glover v. Warner*, 135 Okla. 177, 274 P. 867, 868–870 (1929). Part of the rationale in *Glover* for a determination that delinquent taxes were not a proper purpose within the then existent statute was that the statute at such time did not include debts or obligations that could become liens on the real property by operation of law, as is now the case. *See also Cochran v. Norris*, 175 Okla. 126, 51 P.2d 736, 739 (1935) (order of county court authorizing guardian to execute mortgage on ward's land for primary purpose of paying

delinquent drainage assessment is subject to collateral attack and is void).

In yet another case construing a predecessor statute to § 385 we said: "[a] mortgage of real property of a minor made by a guardian under the direction and supervision of the county judge, but which mortgage is not within the limits of the law authorizing the same, is an absolute nullity." *Kilpatrick v. James*, 173 Okla. 629, 48 P.2d 1034, *First Syllabus* (1935). *Kilpatrick* held that a mortgage made by a guardian under a county judge's direction was a nullity where the purpose of the mortgage was to satisfy physician's and hospital bills. *Id.*, 48 P.2d at 1035. Further, the case of *McPhaul v. Franklin*, 121 Okla. 162, 249 P. 293, *Syllabus* (1926), makes clear that the jurisdiction of courts handling guardianship cases is limited by § 385 in the matter of authorizing or approving mortgages by guardians on the real estate belonging to their wards. As one can see from reviewing the above cases, an order approving a mortgage that is facially not within the limits mandated by § 385 is void and subject to collateral attack.

To counter these cases Peoples asserts that Lee misconstrues the situation and Peoples argues § 385 is not applicable because we are dealing here not with a mortgage, but merely with the settlement of a pending dispute. We disagree. To accept Peoples' view of the situation would require us to ignore the substance of the transaction and rely, instead, merely on its form. The simple fact is that the settlement agreement approved by the judge handling the guardianship **validated a mortgage, as did the agreed judgment of the foreclosure judge.** To us validation of the mortgage is nothing less than authorization of the mortgage. In fact, this was the whole point of the settlement. Review of the settlement and agreed judgment, thus, belies any claim these documents were something other than the placing of a mortgage on the property. That is exactly what they were meant to do and we will not ignore this fact.[10] Accordingly, if the settlement,

---

9. Section 385 applies to minor wards, as well as incompetents. Our case law also recognizes that the duties of guardians to a mentally incompetent person is no less than that accorded to minors. *Matter of Delaney*, 617 P.2d 886, 891 f.n. 14 (Okla.1980).

10. To the extent Peoples argues on appeal that the settlement was merely agreeing to give Peo-

and, thus agreed judgment, authorized a mortgage upon the real property that was unauthorized by § 385, both the approval order of the guardianship judge and the agreed judgment of the foreclosure judge are subject to collateral attack and are void.

As we read the current version of § 385 no mortgage, renewal or extension of a mortgage is allowed to be authorized for an amount greater than may be necessary to pay obligations (i.e. debts) which are already valid liens upon the real property at the time the order is granted or to pay debts which may by operation of law become liens.[11] Here, the agreed judgment and the judgment roll in this case unequivocally and facially show that the $58,000.00 mortgage validated by the approved settlement and the agreed judgment was not to pay a legally existing lien on the property or to pay a debt that by mere operation of law could become a

lien. The record here facially shows the mortgage (in the form of the settlement and agreed judgment) was placed on the property to pay an obligation of someone, i.e. the Smoots, who were eventually determined to own no interest in the property subject to being mortgaged. In other words, the settlement and agreed judgment placed a mortgage on the property irrespective of whether or not it was finally determined that Harding owned the property and irrespective of whether or not the debt was that of someone (the Smoots) who might be determined—as actually finally determined in the previous *Sooner Federal* case—had no interest in the property that was subject to being mortgaged.[12] The settlement simply ignored whether there was actually any debt of the ward that was then a legally existing lien on the property or whether there was a debt which could have become a lien by operation

ples a superior interest in the property to that of Harding we must say we find such argument unavailing. Of course that was what the settlement attempted to do—**by validating a mortgage on the property.** Further, the assertion(s) that the settlement was merely a means to transfer title to the property to Peoples in the event Lee did not sell it in the agreed time frame also provides no solace to Peoples. In the first place, such an assertion is not borne out by the settlement or the agreed judgment. Again, the agreed judgment validated, i.e. recognized as valid, a mortgage on the property. Thus, we have no occasion to decide whether a court approved settlement calling only for the outright sale of the property to Peoples for some type of consideration flowing to Harding would be subject to collateral attack because that is not what occurred. *Compare Beidleman v. Falls*, 195 Okla. 412, 158 P.2d 477, 478–479 (1945) (a guardian's sale of ward's land, made for purpose of paying an invalid mortgage executed by guardian and also for the maintenance, education, and support of the ward, a legitimate purpose, was valid and immune from collateral attack because one purpose of sale was valid). Second, Peoples should not forget that it was not guaranteed that it would be the successful purchaser at the sheriff's sale and, thus, the settlement and agreed judgment simply cannot be viewed as merely a means to transfer title to the property to Peoples.

11. 58 O.S.1991, § 385.1, construed together with § 385, plainly supports our construction of the latter provision of allowing a mortgage (or renewal or extension) only in cases where the obligation is already a legally established lien against the property or an obligation that may by

operation of law become a lien against the property. Section 385.1, in outlining the required contents of the verified petition that must be presented to the guardianship judge in the proceeding to have said judge approve or authorize the mortgage speaks in terms of the **"legally established lien** or the obligation which may by operation of law become a lien [and] the amount of the lien or the amount of the obligation which may by operation of law become a lien...." (emphasis added) We also note that we realize § 385 allows for the inclusion of principal, interest, taxes and such reasonable expenses incident to perfecting such renewal, extension or new mortgage and that § 385 in a second proviso not quoted in the text allows for an additional amount to be included, when authorization is otherwise within the jurisdictional power of the court, sufficient to pay for necessary repairs on the real estate when in the discretion of the judge, such repairs are necessary for the preservation of the property. Neither of these latter allowances, however, lessen the requirement of § 385 that for a mortgage to be placed on the property it must be to pay off an already existing legally established lien or for a debt that may become a lien by operation of law.

12. We note that the record here unequivocally shows that Peoples recognized that Harding could be declared the legal owner of the property. Peoples knew of this possibility because that was the purpose of litigating the issue between Sooner Federal and Harding concerning the deed from Harding to the Smoots, i.e. whether the deed to the Smoots was valid in view of the claim that Harding was incompetent when he executed the deed in favor of the Smoots.

of law.[13] In fact, the whole purpose of the settlement agreement and the agreed judgment was to simply ignore the issue of whether **there was** a legally existing lien against the property, something that could not be done in light of the strictures of § 385.

In our view, in light of the limitations contained in § 385 on the power of courts to approve mortgages sought to be placed on the real property of incompetents by their guardians this was a case that could not be settled by validating Peoples' mortgage as a lien on the real property of Harding.[14] Thus, the approved settlement and the agreed judgment based upon it were void as being outside the authorization granted by § 385.

## PART III. NEITHER LACHES OR ESTOPPEL BARS A COLLATERAL ATTACK ON THE AGREED JUDGMENT.

■ Boiled down, Peoples asserts that either laches or estoppel should be applied to bar collateral attack on the approved settlement and agreed judgment. We find the arguments of Peoples without merit. Peoples' position on laches and estoppel focuses **exclusively** on Lee, the guardian and the inequity of allowing him to delay in attacking the agreed judgment and the consequent prejudice caused to Peoples. Nowhere does Peoples allege that Harding, the ward, has been guilty of any inequitable conduct or unreasonable delay. In essence, Peoples asks us to punish Harding for the supposed misdeed of Lee in delaying an attack on the settlement and/or agreed judgment. This we will not do.

■ Initially we note that laches is an affirmative defense whereby the person claiming the benefit thereof has the burden of proof. *Nadel v. Zeligson,* 207 Okla. 658, 252 P.2d 140, 144 (1952). It is an equitable defense to stale claims. *Olansen v. Texaco, Inc.,* 587 P.2d 976, 985 (Okla.1978). In a situation where the judgment is void our statutory law provides that a judgment may be vacated at any time on motion of a party or person affected thereby. 12 O.S.1981, § 1038, now 12 O.S.Supp.1993, § 1038. We relied on this express statutory directive in *Chaney v. Reddin,* 201 Okla. 264, 205 P.2d 310, 313 (1949), to affirm a trial court's judgment sustaining a motion to vacate a default judgment even though more than eight years had elapsed before the plaintiff attacked the void default judgment. In our view, Peoples presented nothing to the trial court, and has presented nothing to us, that would call for taking this matter outside the confines of the express directive of § 1038 which statutorily allows a void judgment to be attacked at any time and we find there is no basis in this record for application of the doctrine of laches.

For the same reasons we reject Peoples' laches claim we reject Peoples' assertion some type of estoppel should be applied to bar this collateral attack on the void agreed judgment. We also add we have not been particularly eager to find a ward estopped from attacking an invalid judgment by conduct of the guardian. *See Lowery v. Richards,* 120 Okla. 261, 248 P. 622, *Fifth Syllabus* (1926) (guardian of minor cannot, by commencing action on behalf of his ward, enter into compromise and settlement, and confess judgment against his ward, quieting title of the ward's lands in defendant, and a judgment entered by such confession by the guardian does not create an estoppel against a ward who thereafter asserts the invalidity of the judgment). Although *Lowery* is not identical to our case (it had within it an element of fraud and did not concern a mortgage under § 385 or a predecessor statute) it does exhibit our longstanding recognition that the statutory rights of minors and incompetents are to be jealously guarded.

---

**13.** Peoples does not argue the debt of the Smoots could have become a lien on the property by operation of law. An example of a debt that could become a lien by operation of law would be a tax debt against the land as discussed in *Glover v. Warner,* 135 Okla. 177, 274 P. 867 (1929).

**14.** We have in another context concerning the statutory rights of wards recognized that normally a guardian is not to be permitted to give or barter away any of the safeguards that stand erected for the protection of the ward. *Matter of Delaney,* 617 P.2d at 890–891, *supra* note 9. When a guardian does so in spite of the fact his duty is to resist the claim made against the ward, confession of judgment by a guardian's stipulation or otherwise is void and subject to collateral attack. *Id.*

Very simply, Peoples has presented us with no valid rationale for application of the doctrines of laches or estoppel and we refuse to apply either doctrine to bar attack on either the void approved settlement or the void agreed judgment.[15]

For the reasons set out in this opinion, the trial court's order refusing to set aside the sheriff's sale and to vacate the agreed judgment, and the trial court order denying Lee's motion for new trial, are **REVERSED.**

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, SUMMERS and WATT, JJ., concur.

HARGRAVE, J., concurs in result.

OPALA, J., concurs in judgment.

---

**15.** Neither *Westmoreland v. Birmingham Trust & Savings Bank,* 214 Ala. 593, 108 So. 536 (1926) or *State Trust & Savings Bank v. Otero,* 32 N.M. 99, 252 P. 167 (1926), two cases relied on by Peoples, provide support for the position we should apply either laches or estoppel in this case to bar attack on the agreed judgment. *Westmoreland* applied estoppel against a guardian in a case **that pitted the guardian (really the executor of a deceased guardian) against his ward.** Clearly, *Westmoreland* has no application here. *Otero* applied laches against a ward in a case brought by the ward to fasten a lien upon the property of the heirs (and a corporate defendant) of a surety on a guardian's bond. Laches was applied to estop the ward from attacking **a settlement between the guardian and ward (and a release by the ward in favor of the guardian)** because **the ward** was guilty of unreasonable delay prejudicial to the defendants because they changed their position based on the release. The court in *Otero* expressly relied on the fact the evidence was undisputed that the ward and the ward's counsel knew at the time he settled with his guardian and released all claims against the guardian the settlement was unjust and he was being cheated by the guardian. Even if we were inclined to relax the directive of § 1038, that a void judgment may be attacked at any time, Peoples has presented us with no evidence concerning the ward involved here, i.e. Harding, that would call for application of the rule laid down in *Otero* because, as noted in the text, Peoples focuses on Lee, the guardian, not Harding, the ward. *Otero* is, thus, inapplicable.