## WALDRIP, GUARDIAN, v. TULLEY, NEXT FRIEND.

GUARDIAN AND WARD: *Guardian's office and duty as to ward's lands. Advancement for repairs.*

A guardian is the authorized agent appointed by law to take care of the ward's estate and manage his affairs. If the estate consists of lands it is his especial duty to collect the rents and profits, and to this end, to keep the premises in tenantable repair. He cannot build

expensive permanent improvements without a previous order of the probate court; but where, without such order, he advances money to make such necessary repairs as the probate court should, upon application, direct; *e. g.*, in substituting for worn out and useless gin machinery, such new machinery as is necessary to the profitable operation of the gin, he should be allowed credit in his account for his advancements.

APPEAL from *Independence* Circuit Court. Hon. R. H. POWELL, Judge.

*J. W. Butler* and *Robert Neill,* for appellant.

Section 3485, Mansfield's Digest, gives the guardian the care and management of minors' estates, subject to the superintending control of the probate court. This means that he shall take charge of it and make such uses of it for the benefit of the ward, as a prudent and careful man would of his own property. The gin as it stood was valueless, and by repairing it and adding new machinery, it was made a source of income to the wards. The probate court would have made the order, if application had been made, but such an order was not strictly necessary. It was to the interest of the minors, and was done in good faith, and would have been a profitable investment but for the burning.

*Coleman & Yancey,* for appellees.

The jurisdiction of probate courts over the estates of minors is statutory and limited. *36 Ark., 405–6; 33 ib., 428; Mansf. Dig., secs. 3498 to 3514.*

The law requires the guardian, after paying for the maintenance and education of his wards, to lend out their money at interest. (*Mansf. Dig., sec. 3501.*) The invest-

ment of their funds in the manner indicated is not allowed by law. (*Secs. 3512–13–14, Mansf. Dig.*) The expenditures were unauthorized by law. *Ib., sec. 3501; 1 Tenn., Chy., 192.*

SMITH, J. Waldrip was guardian of Adler C. and John D. Magness. His wards were the owners of a cotton plantation, the annual rents from which ranged from $600 to $1000. There was a gin house, at which the cotton raised by the tenants and the planters of the neighborhood was ginned and prepared for market. At the date of Waldrip's appointment the machinery of the gin had become worn out by long use. He advanced about $350 of his own money in the purchase of a new gin-stand, feeder, condenser, horse power, etc., and was thereby enabled to let the use of the gin on advantageous terms. In the midst of the ginning season the cotton press, which was an old one, broke down, and the guardian bought a new one at a cost of $213.60. A few months later, the gin house and its machinery were destroyed by an accidental fire.

In his account current the guardian asked credit for the sums so expended. The mother of the infants filed exceptions, alleging that these expenses were incurred of the guardian's own motion, and without authority of law, and that it was not to the interest of the wards to make the improvements. The probate court overruled the exceptions; but on appeal, the circuit court disallowed the credits, except the item for the press. Counsel on both sides concede that the expenditure for [the press stands upon the same footing as the other expenditures. And for ourselves we can see no difference. A cotton press is a machine for baling the cotton, after the seeds have been separated from the fibre by the action of the gin. And

there could be no use for the press until this process had been performed.

1. Guardian's duty as to ward's lands. Advancements.    A guardian is the authorized agent, appointed by law, to take care of the ward's estate and manage his affairs. If the estate consists of lands, it is his especial duty to collect the rents and profits, and to this end keep the ward's premises in tenantable order and repair. He cannot build or make expensive permanent improvements without a previous order from the probate court. It is not questioned that the guardian acted in entire good faith, believing that what he did would be beneficial for his wards. It would have been safer and better to obtain in advance the sanction of the probate court. But as the proposed improvements were in the nature of repairs, and as the outlay did not encroach upon the capital of the wards, but only anticipated their income for the current year, his action, without directions, only imposed upon him the burden of showing the necessity for the repairs. If it is clear that the probate court, upon an application by him setting forth the circumstances, would and should have granted authority to replace the worn-out machinery, then he should have credit for his expenditures. Waldrip did not embark his wards in a speculation or a new enterprise. Their means were already invested in agricultural lands, which their father and grandfather before them had devoted to the production of cotton. As a necessary adjunct to the prosecution of their planting operations, those ancestors had built and equipped a cotton-gin ; and, as a matter of profit, they had ginned also the cotton of their neighbors. It was a public or toll gin, situated at a steamboat landing on White river, which was considered a good stand for such a purpose. Waldrip had to determine whether he would let the capital that was invested in the gin lie idle and eventually perish, or expend a few hundred dol-

lars in making needed repairs. In concluding to repair he exercised a wise discretion, although he should have laid the facts before the probate court, and have sought its advice. But the making of the repairs was what any prudent man would have done with his own property. And so the uncle of the wards, and the administrator of their father's estate, testified. It would have turned out profitably for the wards but for a calamity which could not have been foreseen. During the few months the gin was operated Waldrip received, as rent for its use, $184.49. The cost of the new machinery would have been repaid by the tolls of two or three seasons.

The judgment is reversed and cause remanded, with directions to overrule the exceptions to the guardian's accounts.