MIGLIORE *v.* MIGLIORE.

4-7362                                          180 S. W. 2d 327

Opinion delivered May 22, 1944.

*John H. Shouse, Merle Shouse* and *J. Loyd Shouse,* for appellant.

*J. Smith Henley* and *Virgil D. Willis,* for appellee.

SMITH, J. This is a suit by a ward to compel his guardian to account for funds coming into his hands as guardian. It was the view of the court below that the funds in question had not come into the hands of the guardian, as such, and the suit was dismissed for that reason, and from that judgment is this appeal.

The facts out of which the litigation arose are as follows: Roscoe H. Channing, a resident of the State of New York, died testate in 1916, leaving an estate of the approximate value of $250,000. He was survived by a daughter and two sons, and his will created a trust in the proceeds of which the children or their descendants shared *per stirpes,* after the death of the daughter who was given the entire proceeds during her life. The Farmers Loan & Trust Company (subsequently renamed City Bank Farmers Trust Company) was named trustee, and empowered to execute the provisions of the will.

The daughter married Joseph Migliore, and one child was born to this union, a son named Roscoe Channing. The daughter died in 1930, and was survived by this son and her husband who had previously removed to this state, and had obtained a divorce, and was later remarried. Upon the death of his wife, he brought their son, then 13 years of age, to this state.

After the death of Mrs. Migliore, the Trust Company qualified as guardian of her son in New York, and thereafter made monthly remittances of the proceeds of the share of the son in the trust to Joseph Migliore, the boy's father, who testified that the remittances were made under the following arrangement: "The bank (the trustee and guardian) wrote me and said they could not pay this money to Roscoe, but they could pay this money if I would be guardian and see that the boy lived as he was accustomed to living." The father accordingly applied for and obtained general letters of guardianship in Boone

county on April 4, 1930, and executed the statutory bond as such.

Monthly remittances were made upon statements furnished to the Bank by the father of expenditures for the son's benefit, and the statements covering them were in each instance approved by the son. These remittances continued until the son came of age in 1937, and totaled about $16,000.

When the son came of age, he and his father went to New York to have the trust settled and closed, and this was done by an order of the Surrogate Court of New York county, which order was based upon a report by the Bank, approved by both the father and the son.

The son, having attained full age, executed an acquittance to the Bank, which recited the full performance by the Bank of its duties as trustee and guardian, and that the sum of $70,789.77 remained in the hands of the Bank. These assets were delivered to the father, with the consent of the son, and have all been dissipated or lost by the father in an unsuccessful business venture, which the father owned and conducted in his own name. No attempt is made by this suit to collect from the father any part of this money. The money sought to be recovered is that paid to the father during the minority of his son.

The statements to the Bank furnished by the father on which the remittances, totaling about $16,000, were made, were offered in evidence, and these show that this money, all of it, was expended for the use and benefit of the son.

The father never, at any time, made any report to the Probate Court of Boone county, of his administration as guardian, and he explains this failure by saying that the Bank advised him that he was its agent, and that he was acting in that capacity, and this appears to have been the theory upon which the suit was dismissed.

At a preliminary hearing before the Referee in Probate, it was ''Ordered that the guardian file complete

settlement showing all sums received by him, in any manner, of the properties of his ward and the disbursements thereof," and this order was complied with by exhibiting the statements to the Bank upon which remittances had been made. Exceptions to this settlement were filed which questioned credits claimed totaling $13,592.38.

These exceptions alleged that none of the expenditures were authorized or approved by the Probate Court of Boone county, and that many of them were never made. The testimony relating to these exceptions reveals a sordid story, which we do not review, as the exceptions were not passed upon by the court. The question presented for our decision is, whether the father may be called upon to account, and the father's insistence is that he may not be called upon to account for the reason that he did not receive this money as guardian, and also that the son ratified and approved all his father had done when the son executed the acquittance to the Bank.

Answering this last reason first, it may be said that the relation between the father and son as guardian and ward was not involved in the settlement with the Bank. The son did acquit the Bank from all liability to him, both as trustee and guardian, but he did nothing more and did not profess to, and in fact, did not settle the prior dealings with his father as guardian.

The father was not appointed guardian ancillary. He was appointed general guardian, and under this appointment received and receipted for the remittances which form the subject matter of this action. The father may not now exonerate himself by saying that he did not receive this money as guardian, but as agent of the Bank.

He received the money, knowing it was the property of his son, and he must account for it as guardian, and he will not be heard to say that he acquired possession of property which he knew belonged to his ward, but received it in some other capacity.

It is said in § 23, 12 R. C. L., "Chapter on Guardian and Ward," p. 1122, that: "It is inherent in the very nature of a guardianship over the estate of a ward that

the guardian is entitled and bound to take possession and management of his ward's property, real and personal." An almost infinite number of cases supporting this text might be cited, including our own of *Waldrip, Guardian, v. Tulley,* 48 Ark. 297, 3 S. W. 192, and *Moss* v. *Moose,* 184 Ark. 798, 44 S. W. 2d 825; but this would be a work of supererogation, as § 6251 of Pope's Digest defines the powers and duties of the guardian in this respect, as follows: "The guardian of the person, whether natural or legal, shall be entitled to the charge, custody and control of the person of his ward, and the care of his education, support and maintenance. The curator shall have the care and management of the estate of the minor, subject to the superintending control of the court; and the guardian of the person and estate of the minor shall have all the powers and perform all the duties both of a guardian of the person and curator."

The letters of guardianship issued to the father recite that Joseph Migliore "has on this day, by the Court of Probate in and for said county of Boone been appointed Guardian for person and estate of Roscoe Channing Migliore, minor, under the age of 15 years," and recite that "The said Joseph Migliore is hereby authorized and empowered to collect and receive all moneys, property and effects that are now, or hereafter may become, due to his said ward . . ."

It must, therefore, be held as a matter of law that the money belonging to the ward, received during his minority, by his father was received by the father in his capacity as guardian, and that the father must account as such. No other question was decided by the court below, and no other question need be considered by us. The judgment of the Chancellor, sitting in Probate, must, therefore, be reversed, and the cause remanded for further proceedings not in conflict with this opinion, and it is so ordered.

HOLT, J., disqualified and nonparticipating.